No. 5084.

FLEMING & BALDWIN *v.* SCOTT and IDA WATSON. MATILDA J. BOWIE
et als. *v.* The same. (Consolidated.)

| 26 | 545 |
| 44 | 840 |
| 26 | 545 |
| d112 | 164 |
| 114 | 823 |
| 26 | 545 |
| :116 | 955 |

It is objected that parol evidence should not have been received to prove the actual boundaries of Hollywood plantation, because, in the old records of the parish, in which Hollywood is referred to, the lands constituting that place are described, and to receive parol evidence to vary or contradict these records is prohibited. This is an error. The boundaries or limits of Hollywood might be changed at will by its owner, if he also owned the adjoining tracts of land, and the evidence received was to show that the boundaries of Hollywood plantation, as well known in 1868, 1869, were different from what they had been eighteen or twenty years before.

The act of sale shows that the Hollywood plantation was sold as a separate and distinct thing, as a field inclosed, with known and well defined limits, and the evidence was to establish said limits. That is certain, which can be made certain.

It is also objected that a partition of real estate can not be established by parol, and therefore, that testimony to show that the field had been actually divided and taken into the possession of the heirs, should not have been received. No valid force can be given to this objection.

There is written proof, by authentic acts, that the partition had been made. The testimony was to prove the fact of the actual division of the field and of the possession by one of the parties of his third share under said partition. The evidence was properly received.

It was further objected that parol evidence should not have been received to prove an *error* in the description of the lands sold to Fleming & Baldwin. If that be true, it would be unfortunate indeed, for there could hardly be any other mode to prove a wrong description.

This is not an attempt to prove, by parol, a sale of immovable property, nor to contradict a valid existing instrument, but to show that, by accident or negligence, the instrument in question has not been made the actual depository of the intention of the contracting parties. *Ex necessitate rei*, parol evidence should be received.

It is on this ground that testimony is let in to prove fraud in every kind of transaction. Cases of error are sometimes kindred to those of fraud, and should be governed by the same rules. Is it not an actual fraud to claim an undue benefit and advantage from a mere mistake, contrary to the real intention of the parties to the contract?

The evidence shows that there was an error in the description of the property in the deed to Fleming & Baldwin to the extent that it conflicts with Hollywood plantation. The other plaintiffs are concluded by their own renunciation and ratification on record, and which they can not now oppose.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J. *T. P. Farrar, W. B. Spencer, A. N. Ogden*, for plaintiffs and appellees. *J. Aroni* and *T. P. Clinton*, for defendants and appellants.

LUDELING, C. J. This litigation was commenced by Fleming & Baldwin suing for a partition of a part of the Hollywood plantation. Matilda J. Bowie et als. also filed a suit against defendants and prayed for a partition and for the fixing of the boundaries between their estates. Fleming & Baldwin then intervened in said suit and joined in the prayer of petitioners. The object of these suits is to fix the boundaries of the lands belonging to the parties to the suits.

The facts, which give rise to the controversy, are as follows : Fleming & Baldwin, transferees of an obligation made by John Ruth and wife, in favor of the Bank of Louisiana, instituted suit thereon against the heirs of Ruth and obtained judgment against them. To secure

35

said debt a mortgage existed on the Locustland plantation, and also on a part of what is now Hollywood plantation. From this judgment the heirs of Ruth appealed, and pending the appeal the parties compromised their differences. Fleming & Baldwin agreed to buy the Locustland plantation for $32,850, fifteen thousand dollars cash and the balance to be credited on their judgment against the heirs in full satisfaction thereof. And the heirs of Ruth, being of age, consented to the sale and settlement of said judgment.

Scott and Ida Watson had a judgment against John K. Ruth, one of the heirs of John and Ann S. Ruth, with a judicial mortgage upon the interest of said John K. Ruth in all the lands of said succession. They also compromised with him by taking from him the "northwestern third" of Hollywood plantation, which said John K. Ruth was then in possession of under a partition, made between the heirs of Ruth, all of age, on the first of January, 1868, long anterior to the sale to Fleming & Baldwin.

The sale to Scott and Ida Watson was made on the twenty-ninth of October, 1869, and the sale to Fleming & Baldwin was made on the first of November, 1869. Both deeds were passed before the same recorder in the parish of Tensas, and thus were recorded on the second of November, 1869.

During many years before the partition and sales above mentioned were made, John Ruth was the owner of several plantations, three of which were the Cypress Grove, Hollywood and Locustland plantations. The latter two are the subjects of this litigation. The first is mentioned only because it forms the boundary of the Hollywood plantion on one side. After Mr. Ruth had acquired these estates it seems he changed the boundaries of the Locustland and Hollywood plantations. The Hollywood plantation was the "home place" of Mr. Ruth, and from the evidence in the record it appears that for nearly a fifth of a century it had fixed and well defined boundaries. This plantation was separated from the Cypress Grove at first by a fence, afterwards by a levee, upon which a hedge was planted; from the Locustland it was separated by the Hempfield lane. The places were worked and managed by different laborers and managers as distinct plantations. The Hollywood plantation contained 9000 acres of land, 1800 acres whereof were cultivated. What constituted Hollywood plantation was well known in the community, and its boundaries and limits were established, beyond controversy, by a number of witnesses. It was this estate, the Hollywood plantation, which was partitioned in January, 1869, among the heirs of Ruth, and of which John K. Ruth received the "northwestern third," "being that part thereof fronting on Lake St. Joseph and adjoining Cypress Grove plantation," etc.

The testimony shows that the heirs went into possession of their portions of the lands; that John K. Ruth took actual possession of the third of the cleared land, " being that part fronting on Lake St. Joseph and adjoining Cypress Grove plantation," with the assent of all the heirs, and that he sold and delivered the same to Scott and Ida Watson, as already stated; that his said vendees had been in the quiet possession thereof a considerable time before any pretensions were set up against them by the plaintiffs. It further appears that, before the purchase of Fleming & Baldwin, they were informed that the Locust-land plantation only contained about seven hundred acres of cleared land, and that when they bought they must have believed that was the quantity of cleared land they were buying; that they took possession of that quantity and set up no pretension or claim to any part of Hollywood until nearly two years after their purchase. These contemporaneous acts of the parties show how they interpreted the partition and acts of sale between themselves.

It is objected that parol evidence should not have been received to prove the actual boundaries of Hollywood plantation, because, on the old records of the parish, in which Hollywood is referred to, the lands constituting that place are described, and to receive parol evidence to vary or contradict those records is prohibited. This is an error. The boundaries or limits of Hollywood might be changed at will by its owner, if he also owned the adjoining tracts of land; and the evidence received was to show that the boundaries of Hollywood plantation as well known in 1868 and 1869, were different from what they had been eighteen or twenty years before. The act of sale shows that the Hollywood plantation was sold as a separate and distinct thing, as a field inclosed, with known and well defined limits, and the evidence was to establish said limits. That is certain, which can be made certain.

It was also objected that a partition of real estate can not be established by parol, and, therefore, that testimony to show that the field had been actually divided and taken into the possession of the heirs, should not have been received. There is written proof that the partition had been made. John K. Ruth, in his act of sale to Scott and Ida Watson, so declares, and the renunciation of his co-heirs of their rights to the said third of Hollywood, and their ratification of said sale to Scott and Ida Watson, declares and recognizes the said partition. The testimony was to prove the fact of the actual division of the field and of the possession of John K. Ruth of his third, under said partition. We think the evidence was properly received. It was further objected that parol evidence should not have been received to prove an error in the description of the lands sold to Fleming & Baldwin. If that be true, it would be unfortunate indeed, for there could hardly be any other mode to prove a wrong description.

"This is not an attempt to prove, by parol, a sale of immovable property, nor to contradict a valid existing instrument, but to show that by accident or negligence the instrument in question has not been made the actual depository of the intention and meaning of the contracting parties." *Ex necessitate rei*, parol evidence should be received. It is on this ground that testimony is let in to prove fraud in every kind of transaction. Cases of error are sometimes kindred to those of fraud and should be governed by the same rules. Is it not an actual fraud to claim an undue benefit and advantage from a mere mistake, contrary to the real intention of the parties to the contract? 2 La. 3; 4 An. 441; 9 An. 29; 15 La. 311; 4 Starkie Ev. 10 and 18.

The evidence shows that there was an error in the description of the property in the deed to Fleming & Baldwin to the extent that it conflicts with Hollywood plantation. The other plaintiffs are concluded by their renunciation and ratification made in the deed of sale from John K. Ruth to Scott and Ida Watson.

It is therefore ordered and adjudged that the judgment of the lower court be annulled, and that there be judgment in favor of the defendants, rejecting the plaintiffs' and intervenors' demands, with costs in both courts. It is further ordered that defendants be quieted and maintained in their possession of the northwestern third part of the Hollywood plantation.

---

WYLY, J., *dissenting.* I dissent in this case, and reserve the right to file my reasons hereafter.

Rehearing refused.