No. 4268

**Second Circuit**

### WINLOCK v. GALLASPY

(April 5, 1932.   Opinion and Decree.)
(May 4, 1932.   Rehearing Refused.)

■■■■■■■■■■■■■■■■■

Argued before DREW, McGREGOR, and PALMER, JJ.

Rusca & Cunningham, of Natchitoches, attorneys for plaintiff, appellant.

S. R. Thomas, of Natchitoches, attorney for defendant, appellee.

McGREGOR, J. This is a petitory action involving the title to 11.6 acres of land on the east bank of Red river, near Grappe's Bluff in Natchitoches parish. This small plot of ground is included in a larger tract that originally belonged to N. F. Scopini, who, at his death, left two children, John F. Scopini and Mrs. Mattie Robieu, his sole and only heirs at law. On February 14, 1900, these two, John F. Scopini and his sister, Mrs. Mattie Robieu, undertook to partition all the property of their deceased father between them. That part of the partition deed which disposed of the small tract in controversy is very indefinite and inexact. There appear to have been two adjacent tracts of land on the banks of Red river which belonged to the estate and which contained in the aggregate 635 acres; the two tracts being designated in the partition deed as the Home Place, known as the John Pierre Grappe Place, and the Old Lezuine Grappe Place. The deed states that "the said J. F. Scopini takes the Home Place in Natchitoches Parish, known as the John Pierre Grappe Place." "Mattie Robieu takes * * * the Old Lezuine Grappe Place * * *." It then continues and says:

"The said J. F. Scopini take the John Pierre Grappe Place *and one-half of the above land in this tract.* Mrs. Mattie Robieu takes the Old Lezuine Grappe Place *and one-half of the above land * * *. Lines in both places to be established hereafter by agreement of said parties.*" (Italics ours.)

The meaning of the phrase "and one-half of the above land," as used in describing what each of the two heirs was taking, is vague, indefinite, and unintelligible.

John F. Scopini was still living at the time of the trial and testified as a witness in behalf of the plaintiff, but Mrs. Robieu had been dead for many years, and her testimony was not, therefore, available.

The partition deed stipulated that a line to mark the exact location of the land of each was to be established by agreement of the parties. At the trial it was testified by John F. Scopini that this line was established soon after the date of the deed by a civil engineer named Henry. In this statement he is corroborated both by circumstances and several witnesses. The matter in controversy is as to where the line between the two properties was situated. It is undisputed that each took actual possession of whatever was allotted to him or her, and that each interest has long since been sold. The plaintiff, Edwin Winlock, traces his title to John F. Scopini, and the defendant traces hers to Mrs. Mattie Robieu. The two chains of title are unbroken and perfect, the only controversy being as to whether the 11.6-acre tract fell to John F. Scopini in the survey that marked the division between the properties of the two heirs of the estate of N. F. Scopini, or whether it fell to Mrs. Mattie Robieu.

In discussing the location of this property it is well to bear in mind several facts. In that portion of Natchitoches parish, land is divided into and designated by sections, townships, and ranges, but the sections are neither square nor uniform in size. Neither do they lie approximately north and south. At this particular place the sections are long and narrow, of irregular

size, and extend in a northeasterly and southwesterly direction.

The bulk of the land comprising the property divided was hill land, though it bordered upon a bluff adjoining Red river. About 30 acres, however, was what is termed "bottom land." As far as we are able to determine from the evidence, the land which was divided between the two Scopini heirs is situated in sections 26, 27, 28, and 29, and in township 11 north, range 8 west. These four sections extend to and border upon Red river. The 30 acres of bottom land originally were in the southwestern end of sections 28 and 29. John F. Scopini is admitted to have received all of the east half of section 26 and all of section 27. He says that this was about one-half of the hill land; that in the division he and his sister agreed that each should have approximately one-half of the 30 acres of bottom land, or 15 acres each; that in accordance with that agreement a survey of this 30 acres of bottom land was made by a Mr. Henry, civil engineer, dividing it into two 15-acre tracts; that a line running approximately north and south between the two tracts was established; that he took the one that was on the west end of the strip and which extended to the east line of section 27; and that his sister, Mrs. Robieu, took the one on the east. If his version of the matter is correct, then his land was in an "L" shape, with a frontage on Red river in sections 26, 27, 28, and 29, while the only river frontage that Mrs. Robieu had was in a part of section 29. In other words, the long, narrow strip of 15 acres which John F. Scopini says he drew in the division cut the Robieu land off from the river across the entire width of section 28 and across a part of section 29. At the time of the trial the original 15-acre tract claimed in the beginning by Scopini had been reduced to 11.6 acres by the caving of the banks of Red river, and practically all of the 15 acres which he says fell to Mrs. Robieu had caved into the river.

As has been stated above, John F. Scopini and Mrs. Mattie Robieu each took possession of the property belonging to them respectively. Both plaintiff and defendant admit this fact and rely upon it. There is nothing in the original partition deed on which even a suggestion of the description of each part can be based. Each side relies upon the fact that a line was established in accordance with the agreement set forth in the deed; that each took possession of the property with reference to that line and finally disposed of it with reference to it.

The plaintiff traces his title by mesne conveyances to the estate of N. F. Scopini through John F. Scopini, and the defendant traces hers to the same source through Mrs. Mattie Robieu.

The first sale made was by John F. Scopini to R. W. Lowe on February 29, 1908. In this deed the land was described as being the east one-half of section 26, all of section 27 in township 11 north, range 8 west (less 10 acres on the north end), "and about 15 acres in Section 28 of the above township and range, situated on the bank of Red River and bordered north and east by lands of Mrs. Mattie Robieu." This description of the 15 acres corresponds exactly with the testimony of Scopini relative to the division of the 30 acres of bottom land. If the 30 acres were divided into two 15-acre tracts, the west tract would naturally be bordered on the north by hill land of Mrs. Robieu and on the east by her 15 acres of bottom land. R. W. Lowe remained the record owner of this land for ten years, and during this time when he was the owner, Mrs. Robieu sold 73 acres of her land to L. Q. C. Grappe on May 28, 1913. This tract is de-

scribed as being wholly in section 29, when as a matter of fact, it is bound to have been in both sections 28 and 29, just as in Scopini's deed to Lowe the 15 acres is described as being only in section 28, when as a matter of fact it also extended over into section 29. In this deed from Mrs. Robieu to Grappe the description is very loose and is as follows:

"A certain tract of land situated in the parish of Natchitoches, and bounded north by La. Ry. & Nav. Co., south by Red River, east by J. C. Copellar; west by R. W. Lowe, containing seventy-three acres, more or less, and one large residence in Section 29; T. 11; N. R. 8 W."

It will be noted that the land sold to Grappe was said to be bounded on the west by R. W. Lowe. At that time Lowe was the record owner of section 27, which is west or southwest of section 28, in which a portion of the 73 acres was situated. Also the 15-acre tract claimed by Lowe is as much west of the 73 acres as it is south, hence it can easily be said that the 73-acre tract is bounded on the west or approximately west by section 27 and the 15-acre tract, both of which, according to the record, at that time were owned by R. W. Lowe. Red river is on the approximate south boundary in section 29.

On March 3, 1917, after the death of Grappe, this same tract was sold at succession sale and Mrs. Robieu bought it back. In the deed the property is described as follows:

"That certain tract of land, situated in the parish of Natchitoches, near the village of Grappes Bluff, said tract of land being bounded north by the Louisiana Railway and Navigation Company, south by Red River, east by J. C. Copellar and west by R. W. Lowe, the exact quantity of which is unknown, part of the tract having caved into the river, being what is left of the same tract of land acquired by deceased from Mattie Robieu, as shown by the records of the conveyance office, parish of

Natchitoches, together with the buildings and improvements thereon, being situated in Sec. 29, T. 11, range north of range 8 west, N. W. Dist. of La."

This deed corroborates the testimony of Scopini and the contention of the plaintiff that a considerable portion of the Robieu tract had caved into Red river. At the time of this sale the Scopini land was still in the name of Lowe, and it will be noted that the deed by which Mrs. Robieu purchased the property states that the land sold is bounded on the west by R. W. Lowe.

Mrs. Robieu sold the land again on the same day to F. G. Gallaspy and J. W. Payne. In that deed the boundaries are the same, the quantity is stated as being uncertain, and the land is described as "being all that remains of the tract acquired by L. Q. C. Grappe from Mattie Robieu." It will be noted that in none of the deeds of the Robieu land is there any special mention made of any particular tract of acreage on the bank of Red river, while in all the deeds involving the Scopini land the 15-acre tract is always specially mentioned, and it is so located that it is as much on the west as it is on the south of the Robieu tract.

The next sale made was of the Scopini tract, which was sold on December 10, 1918, by R. W. Lowe to Mrs. C. G. Scopini, the wife of John F. Scopini. In the description the 15 acres is referred to as being in section 28, and bounded north and east by Mrs. Mattie Robieu. A few months thereafter, on August 6, 1919, Mrs. Scopini and husband joined in a sale to the Gibsland Land & Lumber Company, Limited, under the following description:

"One hundred and sixty-nine and four-tenths acres of land situated on the left descending bank of Red River, containing, by actual measurement, one hundred and sixty-nine and four-tenths acres, and com-

prising the following lots and subdivisions to-wit:

"East half of section twenty-six, township eleven north, range eight west; all of section twenty-seven, township eleven north range eight west; (except ten acres off of the north part of said section sold to J. C. Copellar).

"Also eleven and six-tenths acres lying partly in section twenty-eight and partly in section twenty-nine, township eleven north, range eight west. Together with all the buildings and other improvements on said land and appurtenances thereunto belonging. And being the same property sold to R. W. Lowe by act recorded in book 124, page 77 and bought back from said Lowe by act recorded in book 145, page 18 of the conveyance records of said parish. The said lands being more particularly shown and described on a plat thereof made by M. G. Rugeley, surveyor, dated July 26, 1919, attached to and made a part hereof for a fuller and more complete description of said lands."

In this description it appears that the 15-acre tract of bottom land has been reduced to 11.6 acres. Under the testimony about 4 acres had caved into the river. Furthermore, there is attached to the deed and recorded with it a plat of a survey made by M. G. Rugeley, civil engineer, which shows the exact location of the tract in controversy; at the time of this sale the Robieu tract was standing in the name of F. G. Gallaspy and J. W. Payne. Subsequently this interest was acquired by the defendant, Mrs. F. G. Gallaspy, on May 9, 1925. F. G. Gallaspy's one-half interest was sold at sheriff's sale and was described as being an "uncertain" tract. In that sale Gallaspy's wife, Mrs. Ethel Gallaspy, the defendant herein, was the purchaser.

On December 19, 1928, Payne's one-half interest was sold to Mrs. Julia Johnson. In this deed R. W. Lowe's land is said to be on the west. As a matter of fact Lowe had sold to the present plaintiff, according to the Rugeley survey which specifically described the boundaries of this land in controversy.

In every transfer of the Scopini land the 15-acre tract is specially mentioned. In all the transfers of the Robieu tract the western boundary is referred to as this same Scopini or Lowe or Winlock land. Where descriptions in sales of real estate refer to owners of lands as boundaries on the various sides, the descriptions in the deeds of these various adjacent property owners are recognized, otherwise the description would be meaningless. So when the defendant, in her deeds, says that her land is bounded on the west by lands of R. W. Lowe and Lowe's deed calls for this 15-acre tract which is on the west, she cannot be heard to say that the description in her deed included this same tract.

On December 21, 1926, the Gibsland Land & Lumber Company, Limited, sold the Scopini tract to Edwin Winlock, the plaintiff herein. The 11.6-acre tract is specially referred to and the sale is made with reference to the Rugeley map.

The defendant claims that when F. G. Gallaspy and J. W. Payne bought the Robieu tract it included the 11.6 acres and that the vendees took possession of it and that they and defendant have retained that possession down to the present time. There is nothing in the Robieu chain of title that sufficiently describes the land to justify a plea of prescription; while, on the other hand, plaintiff's chain of title to the Scopini land includes a definite reference to and description of a 15-acre tract from the beginning and later on includes a plat of it made by a civil engineer. The description in all these deeds constitutes a sufficient basis to sustain a plea of prescription. Both parties, however, claim active possession for more than ten years.

.John F. Scopini testifies that soon after 1900, in accordance with the agreement written in the partition deed, a survey was made by a civil engineer by the name of Henry, and that the original 15 acres (now 11.6 acres) fell to him, and that he took possession of it and held it until it was sold to R. W. Lowe in 1908. He testified further that after his wife re-acquired the property in 1918, the Rugeley survey of the 11.6-acre tract was made; that he was present at the time; that the original line fixing the boundary of the 15-acre tract was found and retraced, and that the Rugeley plat of July 26, 1919, was a correct representation of this original Henry survey made shortly after the year 1900; that this 11.6 acres was the same land that he had held in his possession from the year 1900, the date of the partition deed. He testified that he and his wife cultivated this particular tract of land in the years 1918 and 1919. Thus, at the time of the Rugeley survey, it would appear that there had been more than eighteen years of possession since he says he took it as a part of his inheritance.

But F. G. Gallaspy says that when he and J. W. Payne bought the Robieu tract in 1917, he took possession of the tract in controversy by having some pecans gathered from it. There were very few pecan trees near the tract and it is not clear that there were any on it; but, be that as it may, this action cannot offset the possession that Scopini had exercised by fencing the tract and having it worked.

Will Clark, a witness for the plaintiff, testified that he worked the Scopini land for him in 1900, and was present when the thirty-acre tract of bottom land was surveyed by Henry and divided into two fifteen-acre tracts. He stated positively and definitely that after the line was thus run he worked the west 15-acre tract for John F. Scopini, and that he continued to work it most of the time up to the year 1919, when it was acquired by the Gibsland Land & Lumber Company, Limited, the vendor of plaintiff. He was also present when the Rugeley survey was made and knows that the lines run at that time coincided with those run by Henry soon after the partition deed of 1900. Clark's testimony that he was working the land in 1918 and 1919 for Scopini is corroborated by the plaintiff, who was representing the Gibsland Land & Lumber Company, Limited, in their purchase of it on August 6, 1919. He states that Will Clark continued to rent the place for the new owner and to represent him as its agent. For several years Buddy Grappe worked the land in controversy and paid the rent to plaintiff for the Gibsland Land & Lumber Company. According to his testimony no one interfered with the possession of the tract until the year 1928, when the plaintiff's husband laid claim to it for his wife.

F. G. Gallaspy, as a witness for the defendant, testifies that he rented the land in question to the same Buddy Grappe that plaintiff says worked it for the Gibsland Land & Lumber Company. But it seems that the principal thing that Grappe did for him was to gather a few pecans. Grappe evidently was renting land from both parties and paying rent to both. In testifying for the defendant he admitted that he had paid him (Winlock) rent on the 11.6 acres for the year 1927, and several years prior thereto. He endeavors to say that the 11.6 acres belonged to the defendant and that he rented it from her but paid the rent to plaintiff.

John Carlisle, a witness for the defendant, testified that in 1928 he was on the land in controversy as a tenant of the plaintiff and that F. G. Gallaspy ran him off. This corroborates the contention of

the plaintiff that he was in possession at that time through tenants and that that is when he first learned of the pretensions of the defendant.

This is a hard and difficult case, made so by the kind of descriptions written into the various deeds. It has been suggested that the suit should have been brought in the form of an action in boundary. This might be true, but we doubt if any more satisfactory evidence could be produced than we have in the case as made up. Each side seeks to support his title with a plea of ten years' prescription. The description in all the deeds in plaintiff's chain of title refer definitely to a tract of bottom land, the description and acreage of which coincides exactly with the land in controversy. John F. Scopini, who originally owned it and held possession of it for more than 18 years, is very clear in his testimony. He tells just where it is and who worked it for him and his wife. There is proof that it was surveyed shortly after 1900, and that in 1919 another survey was made which coincided exactly with the original one. When the plaintiff and his vendor bought the property it was bought with special reference to this last survey and the original plat was made a part of the deed in 1919 and recorded with it. The preponderance of evidence is to the effect that Scopini, Lowe, Gibsland Land & Lumber Company, Limited, and Edwin Winlock, the plaintiff herein, held open, undisputed possession of the tract from the year 1900 down to 1928, and collected rent from it.

On the other hand, the descriptions in the deeds constituting defendant's chain of title are too vague and indefinite to justify a plea of prescription. Defendant may have gotten some pecans from the tract, but the same man that did this for her worked the land as a tenant of plaintiff and his vendor and paid them rent.

We think that in view of the way in which lands are described in that part of the parish of Natchitoches by reference merely to adjacent owners of land, the plaintiff has made out his case as clearly as could be done. In the very nature of things it is necessary to resort to parol testimony in this kind of cases, and this testimony is overwhelmingly in favor of the plaintiff. We do not know how carefully the trial judge considered the evidence in the case, but it is apparent that about eighteen months elapsed between the trial and the final decision. In the meantime a new judge was elected and the trial judge went back on the bench as judge ad hoc for the purpose of deciding the case. We doubt if he had the assistance of sufficient argument and briefs of attorneys. Judgment was rendered rejecting the plaintiff's demand, and he has appealed.

A careful and painstaking review and study of the record convinces us that the judgment appealed from is erroneous and should be reversed.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby annulled and reversed and set aside, and judgment is granted in favor of the plaintiff, Edwin Winlock, against the defendant, Mrs. Ethel Gallaspy, recognizing him as the true and lawful owner of that certain tract of land containing 11.6 acres, situated partly in sections 28 and 29, township 11 north, range 8 west, in the parish of Natchitoches, bounded on the north and east by land owned by the defendant, Mrs. Ethel Gallaspy, on the south by Red river, and on the west by lands of the plaintiff, Edwin Winlock, all according to a plat

of a survey of the certain 11.6-acre tract made by M. G. Rugeley, civil engineer, on July 26, 1919, and recorded in Book 145 at folio 138, in conveyance records of parish of Natchitoches, state of Louisiana. It is further decreed that the said plaintiff is entitled to the immediate, full, and undisputed possession of said tract of land, and the defendant is ordered to surrender the same immediately upon the finality of this judgment. It is further ordered that the defendant pay all the costs of both courts.