The subject matter of the present controversy was before us in another suit which we decided in 1942, entitled Grice v. Birch et al., 9 So.2d 841. In that suit the plaintiff, Mrs. Grice, brought a possessory action against Birch, the plaintiff in this suit, and against his tenant to be maintained in the possession of five acres of land with the house situated thereon. In that suit Birch and his tenant took the position that the house was not situated on the five acres of land which Mrs. Grice owned and they had not disturbed her in the possession of the land which she claimed to own and which she described in her petition. Mrs. Grice acquired the five acres by bequest in the will of her aunt, Miss Lila Birch, who had acquired the property from Arthur O. Birch.
We decided in the former case that Mrs. Grice did have possession of the house and that it was located on the five acre tract and maintained her possession. In the meantime, Mrs. Grice sold the property to Zeno Watson who took possession from Mrs. Grice. Arthur O. Birch then filed the present suit in the nature of a petitory action, alleging that Watson was in possession of the property without any title whatsoever, and asked that he be recognized as the owner of the property and put in possession thereof.
Watson called Mrs. Grice in warranty and their defense to the suit follows the same line, the substance of which is that Arthur O. Birch, plaintiff, sold to Lila Birch five acres of land described as being taken from the Northwest corner of Birch's land in Section 33 T.1 S.R.6 East, bound north by Highway 71, cast and south by vendor (Birch), and west by Natalbany Lumber Company; that Lila Birch purchased said property from said Arthur O. Birch for the purpose of building a home thereon for herself; that a home was built on said property from lumber and material taken from a house owned by her at another place; that said Arthur O. Birch assisted in moving the house onto the five acre tract which she purchased from him; that, in the alternative, if the court should find that the house was not re-erected on the land purchased by Lila Birch from said Arthur O. Birch but is located on his land, then defendant Watson asks that the house be decreed to belong to him, and that he be permitted to move the house onto his land, or that plaintiff be required to pay him for its value, fixed at $300.
The trial judge rendered a judgment in favor of plaintiff declaring him to be the owner of certain property except the five acres sold by him to Lila Birch, this five acres being described in the judgment so as to place the house on the land of the plaintiff and not on the five acres sold to Lila Birch through whom defendant Watson claims. The alternative demand of defendant Watson for ownership of the house was rejected, and the defendant has appealed.
The principal controversy revolves around the question of whether or not the house of which defendant has possession is located on the five acre tract sold Miss Lila Birch by the plaintiff. If this house is located on the tract, it is obvious that plaintiff cannot prevail in his petitory action to be recognized as the owner of the house and the land on which it is situated and be put in possession thereof, as he must prove his ownership of the property in order to succeed in his petitory action.
The decision of the question involves an interpretation of the deed from plaintiff to Miss Lila Birch as to the location and boundaries of the five acre tract which plaintiff sold and Miss Birch bought; that is to say, the land which the former intended to sell and the latter intended to buy. It is shown by the evidence that Lila Birch, who was an aunt of the plaintiff and a rather elderly lady, wanted to establish a home near her nephew. She owned a house in another part of the community, and the plaintiff and some of his brothers and other relatives of Lila Birch moved this house to its present location, and Miss Lila Birch *Page 347 
lived in the house for several years until just prior to her death in 1941.
Plaintiff claims that the house was not put on the five acres which he sold his aunt; that she did not want to live near some undesirable neighbors and for that reason the house was built to the east and on plaintiff's land; that Lila Birch knew the house was on plaintiff's land; that she wanted the entire place to go back to him at her death. On the other hand, there is considerable testimony in the record going to show that Miss Birch intended and thought that the house was being put on the land she had bought, and the fact that she made a will and bequeathed the five acres to her niece, Mrs. Grice, indicates that she did not intend for plaintiff to have the entire place as he claims. It is suggested that this disappointment on his part might have something to do with plaintiff's contention in this case.
It hardly seems likely that this old aunt would have bought five arces of land from her nephew for the purpose of moving a house on it for her to occupy as a home and then knowingly build or have built the house on the land of another person, even though he was her nephew. If she had been no more concerned than this about the ownership of the land on which she was to build her home, she no doubt would not have gone to the trouble and expense of getting a deed from plaintiff for five acres of land for which she had no other use whatever. The same facts and circumstances would indicate that at the time plaintiff sold the land to his aunt he knew and intended that the house which he assisted in building for her to occupy as a home was on the land which he sold her.
[1, 2] Where the description in a deed is ambiguous and subject to two or more interpretations, the intention of the parties is to be sought, and this intention may be shown by parol evidence and by the acts and conduct of the parties with reference to the property sold. It is obvious from the description in the deed that the five acres sold by plaintiff to his aunt were to be taken out of the northwest corner of plaintiff's land, and the fact that the wrong section number was given in the deed is of no importance as it is conceded that the north line of the five acres was to be a graveled road (Highway 71), and the western boundary was the lands of the Natalbany Lumber Company, conceded to be the west line of Sections 33 and 28.
Plaintiff had a survey made of the five acre tract according to his idea as to the shape of the tract and its boundaries, and, according to this survey, the house is not on the tract, but is located about 125 feet east on the land of plaintiff. The surveyor who made this survey just before this suit was filed took the graveled road as the north boundary and the west line of Sections 33 and 28 as the west boundary. There is no dispute as to these two boundaries. From the point where the graveled road crosses the section line, the surveyor ran south on the section lines a distance of 400 feet for the west line of the tract. The north line on the graveled road runs in a slightly northeasterly direction (N. 74° 30 Min. east) a distance of 485 feet. He ran the south line at right angle to the section lines a distance of 467 feet, and then ran the east line north at right angles and parallel to the section lines a distance of 535 feet to the graveled road. As already stated, this survey places the house about 125 feet from the east line of the tract.
The surveyor could give no satisfactory reason for running the lines on the south and east as he did. If the assumption was that the five acres was intended to be in the form of a square, the survey obviously does not make a square.
[3] We are satisfied that the house is situated on the five acre tract which the plaintiff sold to his aunt, and the most reasonable construction to be placed on the description in the deed to effectuate the manifest intention of the parties thereto is to take the fence east of the house as the eastern boundary of the tract. The preponderance of the evidence indicates that this fence is the boundary on the east. There is some difference in the testimony as to whether the fence was built before or after Birch sold the land to his aunt. He says it was built before he sold the land, and that the fence was not the boundary; other evidence indicates the fence was built after he sold the land, and that it was considered the boundary. Whether it was built before or after he sold the land is of no great importance because of the fact that the fence helps to enclose the land on which the house was built and separates the tract from a pasture belonging to plaintiff, and it is reasonable to believe that the parties considered this fence as the *Page 348 
eastern boundary as much of the evidence indicates.
From the maps filed in the record, it is clear to us from an examination of these maps, that if this fence is taken as the eastern boundary of the tract, the graveled road as the northern boundary, the section lines as the western boundary, and a line is run parallel with the graveled road a sufficient distance south so as to include five acres, the tract would include the house and at the same time place the tract in the northwest corner of the land which plaintiff Birch owned at the time he sold the five acres to his aunt.
For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that the land sold by plaintiff to Lila Birch be decreed to be that five acre tract of land bound on the west by the section lines of Sections 33 and 28 Tp.1 S.R.6 East; on the north by a graveled road (Highway 71); on the east by the fence hereinabove referred to; and on the south by a line run parallel with said graveled road so as to include five acres; that insofar as plaintiff's petition seeks to have plaintiff recognized as the owner and put in possession of any part of said five acre tract with the improvements thereon, his said petition is hereby dismissed and his demands are rejected at his cost in both courts.