ELLIS, Judge.
This is a petitory action in which the plaintiffs assert ownership of four and one-tenth acres of land described as Tract No. 1 in an act of sale from Mrs. Leila A. Ard, Mrs. Hazel R. Davis and Mrs. Wilma Ard Hatcher, widow and forced heirs respectively of Felix G. Ard, passed on the 6th day of January, 1954 before John Allen, Deputy Clerk and Notary Public in and for the Parish of Livingston, Louisiana, purporting to transfer the following described property:
“Three certain tracts or parcels of land situated in the Parish of Livingston, State of Louisiana, more particularly described as follows, to-wit:
“1. Five (5) acres more or less, in North half of Northwest Quarter of Southwest quarter of Section 23, Township 6 South, Range 6 East.
“2. A certain tract of land, commencing at a point 500 feet North of the SE corner of Section 22 (which is also the SW corner of Sec. 23) and measure north 380J4 feet; thence S. 89 deg. 45 minutes E 400 feet; thence S. 1 deg. 30 minutes W. 379 feet; thence S 89 deg. 40 minutes W. 394)4 feet to point of beginning, containing 3.46 acres and being a part of the SW¡4 of the SW¡4 of Section 23 T 6 S R 6 East, as per survey by C. M. Moore, C. E.
“3. A certain parcel of land lying south of a certain Branch and North of the 3.46 acres secondly described herein, it is understood, that the center of said branch is to be the North line of said property.
“Together with all the buildings and improvements on the property herein described.
“It being the intention of the vendor herein to convey unto said vendee all of the property owned by her lying and being north of the Baton Rouge Hammond & Eastern Railroad Property.”
On the 19th day of July, 1945, the vendors of the plaintiff herein, Mrs. Leila Ard, Mrs. Hazel Ard Davis, and Mrs. Wilma Ard Fuller, (on this date the divorced wife of R. E. Fuller who had remarried on the date of the sale to plaintiff) sold and transferred to Julius Nagy, Sr., father of the present defendants who are his children and sole heirs, the following described property, to-wit:
“Ten (10) acres of land or less being all of the land north of the center line of a certain branch running through the following described lands: Commencing at the NW. Corner of S)4 of NW|4 of SW)4 of Section 23 T. 6 S.R. 6 E. and measure S 89 deg. 45 E. 5.80 chains to West line of Highway, thence along same S. 7 Deg. E. 4 Chains; thence S. 3 Deg. E. 3.00 chains; thence S. 1 Deg. W. 3.50 chains; thence S. 2 Deg. W. 6.83 chains, to S.E. corner of tract; thence N. 89 deg. 45 Min. W. 6.10 chains to Section Line; thence along same North 17.33 chains to point of beginning, as in survey by C. M. Moore, C. E. and Being part of the same property acquired by Felix G. Ard from W. W. and H. H. Thomas as per deed recorded in Conveyance Book No. 45 on page 106 and being a part of the same property acquired by vendors herein through inheritance from their deceased husband and father. This particular piece of property was omitted in the description of the property in a Judgment of Possession recorded in Conveyance Book No. 61 on Page 102 of the records of the Parish of Livingston.”
The property which Julius Nagy, Sr. purchased, above described, was known as the Ard farm which was bounded on the west by the section line between Sections 22 and 23 T 6 S R 6 E, on the north by the lands of Paul Sziszak, on the East by the Albany-Montpelier, and on the south by lands also belonging to the Ard family. As the property had no house on it, Julius Nagy Sr., built one, assisted by his son, *905 Julius Nagy, Jr., which was completed in December of 1945 and the family moved into. it. Fences were repaired and a cross fence north of the house was built. In 1947 Julius Nagy, Jr., built a house on the northern part of his father’s property and lived in it for about a year and since then has rented it to tenants. Julius Nagy, Jr.’s home was built on the approximately five acres as described in tract 1 of the deed from the Ards to the plaintiff, approximately 86 feet north of the south line of the five acres in dispute. There is no question but that the Nagys immediately upon purchasing the property took possession from the center of the branch on the south to the line dividing their property on the north from that of Paul Sziszak.
When the common authors in title of plaintiffs and defendants learned or realized that the five acres of land had been included in the sale to the plaintiffs, they attempted to secure an act of correction from the defendants and it was refused. The vendors, together with Hon. John Allen, deceased, at the date of the trial, and who was the Notary who drew the act, signed an ex parte authentic act of correction, stating that there had been included in the sale to the defendants three tracts of lands and described them as in the deed, that in truth and in fact the property conveyed therein contained only two tracts of land, which together amounted to five acres, more or less, in Section 23, T 6 S R 6 E; and that the true intention of the vendors as stated in the last paragraph of said description to be all the property owned by them lying and being north of the Baton Rouge Hammond & Eastern Railroad property. The act of correction then states that the parties “do hereby acknowledge said erroneous description and declare that the property conveyed therein should have been described therein as follows, to-wit:”. It then described two certain tracts or parcels of land containing five acres, more or less, and then particularly describes the property which shows that it was the property numbered (2) and (3) in the original act; John Allen, the Notary Public, declared that the error in the description in the deed was made by him in preparing the deed.
After refusing to sign the act of correction, the defendants consulted an attorney and secured the services of a survey- or, and on April 18, 1956 a letter was written by counsel for the plaintiffs to Nagy and this suit was filed on March 18, 1957.
The defendants filed an exception of no cause or right of action which was overruled and is not being re-urged on appeal. The defendants further denied the material allegations of the plaintiffs’ petition and specifically set forth that the act of sale recorded in Conveyance Book 75, page 259, was not a deed translative of title to the five acres in dispute, and then, in the alternative, should the court consider that the plaintiffs had a recorded title to any portion of the property of which the respondents have been in possession, they plead that under the act of sale by which the plaintiffs claimed to have acquired the five acres as recorded in Conveyance Book 75, page 259 “it was not the intention of plaintiffs’ vendors to convey nor of plaintiffs to acquire any property of which respondents are in possession;” the defendants then declared upon the act of correction dated Feb. 12, 1955, signed by John Allen, the then Deputy Clerk and Notary Public, and the common author in title and vendors of both plaintiffs and defendants before a Notary Public in which they acknowledged and declared an error had been made in preparing the deed on Jan. 6, 1954, and as recorded in Conveyance Book 75, page 259 by which the plaintiffs claimed ownership of the five acres at issue in this suit; defendant further specifically set forth that the plaintiffs intended to purchase and the common authors in title intended only to sell to the plaintiffs that property having its northern most boundary line on the center line of the branch; that the plaintiffs were aware that Julius Nagy, Sr., was then in possession of the property at issue and that he had been *906 in possession since July 1945, and that he claimed ownership by purchase from plaintiffs’ vendors; defendants specifically charged the plaintiffs with bad faith in attempting to take advantage of an error and mistake in that deed by claiming ownership of the property which they allegedly never purchased nor intended to purchase and to which they had no title and had never possessed ; defendants then, in the alternative, in the event the court should hold that the plaintiffs had a recorded title to the five acres at issue and should overrule the plea of error and mistake, plead their title and that they had a more ancient and recorded title to the said property than the plaintiffs and were the true and lawful owners and entitled to continue in possession of same; and alternatively plead ten years prescription under Article 3478 of the Revised Civil Code of Louisiana-LSA and lastly the enhanced value of the property by virtue of the improvements placed thereon which is not at issue on this appeal.
The case went to trial and because of the obvious and admitted ambiguity of plaintiffs’ description of the five acres in dispute, parol testimony was allowed to locate and identify the five acres.
The defendants then offered parol :
(1) To prove that plaintiffs’ title was so vague and ambiguous as to be incapable of conveying title to any property, that is, that the property could not be located;
(2) To rebutt the parol offered by plaintiff to show the location of the property described in their deed.
(3) To prove error and mistake in plain.tiffs’ deed.
(4) To amplify and explain the ambiguous description in defendants’ deed.
(5) To prove the good faith of the defendant.
' As we understand the written reasons of the lower court, he accepted the parol offered by the plaintiffs as identifying and locating the five acres and rejected the parol testimony of the defendant as having proved any error or mistake in plaintiffs’ deed. The Lower Court in his written reasons specifically states that he rejected the parol testimony for the purpose of amplifying or explaining the alleged ambiguous description in defendants’ deed because the description was perfect and the plaintiffs were considered by him as third parties to the deed whereby the defendants acquired the property from the common authors of both plaintiff and defendant. The lower court stated in his written reasons rejecting the parol testimony offered by defendants that: “The defendants are attempting to destroy a written, recorded deed by parol evidence in the guise of explaining another deed, and are attempting to destroy the Blackwell deed by offering parol testimony to show error in the deed to Nagy Sr. from the Ard heirs. The Court does not see how this can be done, particularly as the Black-wells are third parties to the original Nagy deed.”
The District Court, therefore, rendered judgment in favor of the plaintiffs recognizing them to be the owners of the property in dispute and ordering possession of the same delivered to the plaintiffs. Application for rehearing was filed and overruled by the lower court and the defendants have appealed to this court.
Felix G. Ard, husband and father, respectively, of Mrs. Leila A. Ard, Mrs. Hazel Ard Davis and Mrs. Wilma Ard Hatcher, who were the common authors in title of plaintiffs and defendants, purchased from H. H. and W. W. Thomas two pieces of property. The first property was purchased from the Thomases on the 25th day of June, 1921, and was described as follows:
“Twenty (20) acres off the North side of the Northwest quarter of Southwest quarter of Sec. 23 T. 6 S. R. 6 E. Parish of Livingston, State of Louisiana.”
This deed was recorded July 14, 1921 in Conveyance Book 35, page 554, of the records of Livingston Parish, Louisiana.
*907 On the 1st day of June, 1927 Felix G. Ardsold to Paul Sziszak 14.8 acres of the twenty acres above described and acquired in 1921 from W. W. and H. H. Thomas, which was more fully described as being: “14.8 acres in SE54 of Sec. 23, T 6 S. R. 6 E. and being more fully described as follows, to-wit: Commence at the NE corner of a 20A, tract and measure S. 984 chains thence West 13.74 chains to East line of a 50 ft. Gravel road thence N 15° 20/ W 1016 chains thence East 16.44 ch. to point of beginning and as surveyed by C. M. Moore, C. E.
“Said 20 acre tract described as follows: 20 acres of the Northside of the N.W. one quarter of S.W. one-quarter of Sec. 23, T 6 S. R. 6 E, Parish of Livingston State of Louisiana.”
This deed was recorded June 9, 1927 in Conveyance Book 42, page 393 of the records of Livingston Parish, Louisiana.
Thus from the 20 acres originally bought' by Felix G. Ard from H. H. and W. W. Thomas, supra, apparently Felix Ard had 5.2 acres remaining. This 5.2 acres lies directly north of property secondly purchased by Felix G. Ard from H. H. and W. W. Thomas on the 28th day of August, 1928 and which was described in said deed as follows:
“Commencing at the NW. comer of S1/2 of NW14 of SW}4, and measure S. 89* 45' East 5.80 chains to West Line of Highway, thence along same S. 7* E, 4 chains thence S, 30* E, 3.00 chains thence S. 1* W 3.50 chains, thence S. 2* W. 6.83 chains; to S.E. corner of this tract; thence N. 90* 45' W. 6.10 chains to Section line, thence along same North 17.33 chains to point of beginning, as. in survey by C. M. Moore, C. E. all in Section 23 T 6 S R 6 E.”
This deed was recorded Sept. 8th, 1928 .in Conveyance book 45, page 106 of the records of Livingston Parish, Louisiana.
It is well to bear in mind that the five acres in dispute lies directly to the' north of the lastly above described property, and' the north boundary line of the five acres-is the south boundary line of the land of’ Paul Sziszak. This is also the piece of property through which the branch runs and which the Nagys claim the center thereof is their southern boundary,, and the northern boundary, of all property which was intended to be sold by the common authors in title to the plaintiffs.
In view of the ambiguity in the plaintiffs' title, which clearly required parol evidence to identify and locate it, and of the defendants’ answer charging other lack of an intention on the part of the plaintiffs and of the common authors of the plaintiffs and defendants, to sell to the plaintiffs the five acres in dispute and, therefore, any inclusion of the five acres within the deed was through error and mistake, and in further consideration, of the allegations of the answer .of the defendants in which they set up and plead alternatively the title which their father, Julius Nagy, Sr. acquired on the 19th 'day of July, 1945 as covering the property in dispute and being a more ancient recorded title than plaintiffs’, all of which defendants contended necessitated the introduction of parol testimony, and particularly to amplify and explain the ambiguous description and/or error or mistake in. the defendants’ deed, it is well that there be a .thorough understanding of the. law and jurisprudence relative to the introduction of parol testimony to alter or vary an authentic act as between the parties to the act and/or a stranger.
Article 2236, R.C.C.-LSA is as follows:
“Force and effect of authentic act. — The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery/’
Article 2276, R.C.C.-LSÁ is as follows:
“Admissibility — Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor -on what may *908 have been said before, 'or at the time of making them, of since.”
Article 1945 of the Revised Civil Code-LSA provides in part:
“Abrogation or modification — Construction according to intention of parties.— Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
* * * * * ‡
“Second — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
“Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences ;
“Fourth — That it is the common intent of the parties — that is, the intention of all— that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract. (As amended, Acts 1871, No. 87.)” (Emphasis added.)
Article 1819 of the Revised Civil Code-LSA reads as follows:
“Consent defined — Mistake, fraud, or duress — Effect—Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraphs, but also where it has been produced by — Error; Fraud; Violence; Threats.”
Therefore, parol evidence is admissible where there is or was no true intent to sell or convey a certain piece of property in an act of sale, not only where the intent has not been mutually communicated or implied but also where it has been produced by error, fraud, violence or threats, for in such cases there is no consent. Parol is admissible to vary even a clear and unambiguous deed. The cases are legion in which parol evidence was admitted in such a case as the one at bar, and in which it is stated that plaintiff must recover under the strength of his own title rather than the weakness of the defendant’s and in which the extent to which the defendant’s parol testimony may go in opposing or disproving the title to the property offered by the plaintiff. In view of the fact that counsel for the defendant has meticulously and correctly cited and reviewed the jurisprudence applicable to the introduction and extent of parol evidence in a petitory action where the deed is vague and ambiguous, we will, therefore, use a portion of his brief in which counsel has cited and reviewed the jurisprudence on the question, and we quote:
“Since the Courts are bound to discover and give effect to the true intent of the parties, and a vague and ambiguous deed does not reveal the true intent, it is necessary to admit parol evidence to explain an ambiguous deed. Our courts have consistently applied the.rule that where a deed is vague and ambiguous the ambiguity may be explained by the use of parol evidence. Certainly both parties to a controversy should be allowed to offer parol to explain what is intended. See Item Co. v. Polazzo, 1931, 18 La.App. 594, 134 So. 345; Winlock v. Gallaspy, La.App.1932, 140 So. 846; and it is not even necessary to specifically plead such ambiguity; Bank of Napoleonville v. Knobloch and Rainold, 1918, 144 La. 100, 80 So. 214. See also Rudman v. Dupuis, 1945, 206 La. 1061, 20 So.2d 363; Sexton v. Waggoner, La.App.1953, 1st Cir., 66 So. 2d 634; see also Dufrene v. Tracy, 1957, 232 La. 386, 94 So.2d 297.
“In Rudman v. Dupuis, supra, the plaintiff was allowed to introduce parol evidence to explain the ambiguity in an instrument conveying a royalty interest and to which she was not a party. The court stated:
*909 “ ‘Thus we are confronted with a provision which is fairly susceptible of two constructions. It is uncertain, ambiguous. And no other stipulation in the deed provides an explanation of it. Therefore, under these circumstances, the intention of the parties can be ascertained only by a consideration of evidence dehors the instrument, a course pursued by the trial judge.
“ ‘When extrinsic evidence was offered for the purpose of explanation defense counsel objected to its admission, urging that it would effect the creation of a contract different from that which the parties reduced to writing. In our opinion the objection was correctly overruled. We appropriately said in Holloway Gravel Co. Inc. v. McKowen et al., 200 La. 917, 9 So.2d 228, 232, that:
“ ‘It is elementary that in the execution of deeds and like instruments the intention of the parties must be gathered from an inspection of the instruments without the aid of extrinsic evidence, but if the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in its construction. Hudson v. Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148,’ 20 So.2d 363, 364.
“In Birch v. Watson, La.App. 1st Cir. 1945, 23 So.2d 345, defendant was a third party or stranger to plaintiff’s deed and was allowed to introduce parol to show the true intent of the parties.
“ Where the description in a deed is ambiguous and subject to two or more interpretations, the intention of the parties is to be sought, and the intention may be shown by parol evidence and by the acts and conduct of the parties with reference to the property sold. * * * ’ 23 So.2d 345, 347.

“Counsel submit that this rule governing the use of parol evidence is so well established that no further citation of authority is required.”
“From these articles flow the rule that where fraud or error and mistake in a deed is pleaded, parol evidence may be admitted for the purpose of establishing same. Parol is admissible, under these circumstances, to vary even a clear and unambiguous deed. For example, if a deed recited that Lot 24 of a certain subdivision was sold and a party later pleads that the deed was intended to cover lot 23, then parol would be admissible for the purpose of showing the intention of the parties. The rule admitting parol evidence for the purpose of establishing fraud, error and mistake, is so well established as to hardly require citation, however, the court’s attention is particularly invited to the following cases.
“Dorkins v. Montgomery (2 La.App. 292) was an action to fix boundaries rather than a petitory action; otherwise, the case is almost identical to the one before the Court. Both parties had a common vendor, and defendant, in his answer, set up that there was an error in plaintiff’s deed and that since he did not own the land he claimed, plaintiff had no right to have its boundary fixed according to an erroneous description.
“The Court held:
“ ‘On the trial of the case the defendant offered to show by parol testimony that plaintiff’s deed [contains] an erroneous description. Evidence to prove this wrong description was admitted over plaintiff’s objection. The lower court held and we hold that parol evidence is admissible to prove a wrong description in a deed.
“ ‘In the case of Fleming & Baldwin v. Watson, 26 La.Ann. 547, the court said:
*910 ' “‘It was further objected that parol evidence should not have been received to prove an error in the description of the lands sold to Fleming & Baldwin. If that be true, it would be unfortunate indeed, for there could hardly be any other mode to prove a wrong description.’
“ ‘This is not an attempt to prove by parol a sale of immovable property, nor to contradict a valid existing instrument, but to show that by accident or negligence the instrument in question has not been made the actual depository of 'the intention and meaning of the contracting parties. Ex necessitate rei, parol evidence should be received. It is on this ground that testimony is let in to prove fraud in every kind of transaction. Cases of error are sometimes kindred to those of fraud and should be governed by the same rules. Is it not ah actual fraud to claim an undue benefit and advantage from a mere mistake, contrary to the real intention of the parties to the contract?’
“ ‘In Planque v. Guesnon, 15 La. 311, it was held that parol evidence was admissible to show that the description of a lot in a deed was made through error and that the lot actually sold was a different one from that described in the deed.
“‘See: Sims v. Jeter, 129 La. [262], 266, 55 So. 877.' 2 La.App. 292, 297.”
‡ ^ #
“Smith v. Chappell, 1933, 177 La. 311, 148 So. 242, is, we believe ‘on all fours’ and is a landmark case on the admissibility of parol evidence in petitory actions.
“In that case, a petitory action, plaintiff acquired from ‘A’ in 1920 and defendant acquired from ‘B’ in 1924, who in turn acquired from ‘A’ in 1921. Defendant specifically pleaded mistake and error in plaintiff’s deed, and having alleged it, was allowed to offer parol evidence to prove it. The Court stated:
“ ‘Numerous other cases might be cited. The other reason, and this is the principal one, is that the testimony was not offered to contradict or reform the deed, but to show that there was mistake and error in that part of the description setting out the number of feet and to show the true intent of the parties as to the description of the land conveyed.
“ ‘It is well settled that parol testimony is admissible to show errors in the description of property sold. In Levy v. Ward, 33 La.Ann. 1033, Chief Justice Bermudez, as the organ of the court, said:
“ ‘ “The reception of parol testimony to establish a clerical error, almost patent in the description of land contained in the deed, as also to explain lurking ambiguities, to identify the property, to prove fraud practiced in the transfer of land, to show possession, to show boundaries, is no infringement of the rule which demands that title to real estate be evidenced in writing only.”
“ ‘In Fleming & Baldwin v. Scott, 26 La.Ann. 545, the objection was made that parol evidence should not be received to prove error in description of the lands sold. The court held that such evidence was admissible, and that, if such were not true, “it would be unfortunate indeed, for there could hardly be any other mode to prove a wrong description.”
“ ‘In Vignie v. Bradley et al., 35 La. Ann. 560, it was held that parol testimony is admissible to prove a mistake in a description of lands set out in a deed of conveyance, where error is alleged, and even to show that a tract of land described therein was not sold, or intended to be conveyed by the deed.
“ ‘In the case of Lattimer’s Heirs v. Gulf Refining Co., 146 La. 249, 83 So. 543, it was held that, “Even where the *911 subject of a sale is real estate and the sale is a judicial one, an error in the description of the thing actually sold may he shown by parol.” (Point 2, syllabus) See, also, Sims v. Jeter, 129 La. 262, 266, 55 So. 877, and Waller v. Colvin, 151 La. 765, 92 So. 328.
“ ‘As to the intention of the parties, the rule is that “the real intention of the parties is to be sought and carried out whenever possible.” (8 Ruling Case Law, 1037), and “it is well settled that deeds must be construed so as to effectuate if possible the intention of the parties” (13 Cyc. 601).
“ ‘As there was a specific allegation of mistake and error in part of the description it,was permissible for defendant to show that by parol testimony if he could’. 148 So. 242, 246, 247.”
“The court’s attention is also invited to Burt v. Carrier, La.App. 1st Cir.1957, 92 So.2d 86, where the parties in a petitory action had a common author in title. There defendants were allowed to introduce parol evidence for the purpose of showing error in the deed from their author in title to the plaintiff. Both parties to the deed (plaintiff and the common author in title) testified that it was not their intention that the disputed property was to be included in the sale, and the court based its decision on this testimony. * * *
“Thibodeaux v. Thibodeaux, 1904, 112 La. 906, 36 So. 800, was a suit for a partition. Plaintiff acquired title at a succession sale. Defendants were the heirs of the deceased and they attacked the validity of the sale to plaintiff. The court stated:
“ ‘The counsel for the plaintiff insist that the inadequacy of the price affords no ground for a collateral attack upon his title. Ownership is, however, the basis of the action for partition which has been brought by the plaintiff, and it must be alleged and proved, and the necessity for such allegations and proof is itself a concession of the defendants’ right of denial and counterproof. Civ.Code, Art. 1320; Davis’ Heirs v. Elkins et al., 9 La. [135], 147; Michel v. Davis’ Heirs, 12 La. 152. If the positions of the litigants were reversed, and the defendants, under cover of an action for partition, had initiated an attack upon a judicial sale, the objection that the attack could not thus be made collaterally would be good. Barbee v. Perkins et al., 23 La. Ann. 331. But, where, as in this case, the plaintiff in the suit alleges, as he is bound to allege, that he is part owner of certain property, sets up, as he is bound to set up, title thereto, and asks that the court recognizing his ownership, will order that the property be divided between him and those whom he sues, he challenges the latter for all the purpose of the case, and they have no choice in the matter, but must come into court and then and there meet the issues tendered, including the issue of ownership vel non in the plaintiff, which they find upon the threshold. It has been held by this court that the right of a party assailed in a petitory action to inquire into the validity of the proceedings' under which the party attacking acquired title can admit of no doubt * * 36 So. 800, 801.”
“Plaintiffs in this case are likewise required to set.up .and prove ownership in themselves, and defendant's have been challenged for all purposes of the case and defendants are clearly entitled to attack the ownership vel non of the plaintiffs.
“Thibodeaux v. Thibodeaux, supra, has been re-affirmed by the Supreme Court on numerous occasions. See Norah v. Crawford, 1950, 218 La. 433, 49 So.2d 751, especially at 49 So.2d 754 and 755, where the court discusses question at length and cites Code of Practice, Article 15, and Revised Civil Code, Article 1320, as authority for permitting such an attack. See also Cronan v. Cochran, 1875, 27 La.Ann. 120, and Surgi v. Colmer, 1870, 22 La.Ann. 20, where the court stated:
*912 “ ‘This is a petitory action, in which the plaintiff seeks to wrest from the defendant certain property in his possession, and to do so in virtue of the judgment, seizure and sale by which he asserts title. He makes directly issue upon that title. The defendant has the right clearly, to protect himself if he can do so by showing the invalidity of the title with which he is attacked.’ 22 La.Ann. 20, 21.”
“The authorities heretofore cited are examples of the Louisiana Jurisprudence admitting parol evidence in proper cases, and allowing the defendant in a petitory action to attack plaintiffs’ title. The jurisprudence is long and uniform and the rules are well established and well known.”
There can be no question from the above authorities but that the plaintiffs had the right to introduce parol to locate and identify the five acres described as Tract 1 in his deed, and to show that it was the same property which the Ards intended to convey to him. On the other hand, the defendants can attack the plaintiffs’ title by parol evidence to prove error, in that it was never any intention, nor mutual consent, on the part of the vendors to sell the plaintiffs the five acres in dispute. However, this being a petitory action it must be remembered that the burden is on the plaintiffs.
The plaintiffs have offered the testimony of the surveyor employed by them who stated that he examined the titles of plaintiffs and defendants and particularly traced out the sales made from the two pieces of property purchased by Felix Ard from H. H. and W. W. Thomas, and found, in his opinion, five acres to the north of the Nagys, which he identified as Tract 1 in plaintiffs’ title, as still belonging to the widow and children of Felix G. Ard on the date the plaintiffs purchased the three tracts of land from them. The surveyor eliminated the five acres as being included in the defendants’ title by an examination of the map made by C. M. Moore of the tract purchased by Felix Ard from H. H. and W. W. Thomas as recorded in Conveyance Book 45, page 106, which, of course, did not include the five acres, as it was purchased as a part of 20 acres, 14 of which was sold to Paul Sziszak in Conveyance Book 35, supra. Furthermore, the surveyor testified that by a process of elimination he found that the five acres had not been previously sold by the Ards. The surveyor admitted that he found an old fence at the northern boundary of the five acres in dispute, which is in accordance with the proof that the defendants took possession of all the property from the creek or branch north, including the five acres in dispute, after the date of the act of sale from the Ards to Nagy, Sr.
There is no doubt but that the surveyor employed by the plaintiffs located the proper five acres, but that does not end the lawsuit. There are two questions:
1. Whether the plaintiffs intended to purchase and the Ard intended to sell the five acres in dispute, and
2. Whether the Ards did, or intended to, sell and include in the description contained in the act of sale from them to the Nagys the five acres in dispute.
This proof would necessitate the use of parol to show error and mistake in failing to include the five acres in defendants’ deed, which the plaintiffs say cannot be done, or objected to, on the ground that the plaintiffs are innocent third parties insofar as the deed from the Ards to the Nagys is concerned. In view of the conclusion which we have reached as to the first question presented, it will not be necessary to discuss the second.
The overwhelming preponderance of the evidence in this case proves that the plaintiffs never intended to purchase the five acres in dispute but only the land south of the branch which formed the southern boundary line of the Nagy property, and then north of the railroad containing ap *913 proximately five or six acres. It is equally clear, and overwhelmingly proven, that the Ards never intended to sell to the plaintiffs the five acres in question. Each one testified concisely and clearly and without equivocation that they considered that the five acres had been sold to the Nagys some ten’ years prior to the sale to the plaintiffs, and it was never their intention to include it in the deed to the plaintiffs. The testimony is explicit, also, that the Ards thought that the five ácres as described in the succession proceedings and as Tract 1 in the plaintiffs deed was that south of the branch and north of the railroad. It is also shown that Mrs. Ard had a “For Sale” sign on the property south of the branch and north of the railroad and that Mrs. Blackwell went over and inspected this property which contained six or seven Negro tenant houses and there was never any particular five acres north of the Nagys mentioned. Mrs. Blackwell, who is one of the plaintiffs, also testified that she did not know where the north boundary line was but that she was to get any land which the Ards owned north of the railroad. This limitation “north of the railroad” was clearly placed in the deed to locate the five or six acres south of the branch and which the Ards knew that they still owned, and was not intended to cover any unknown land north of the branch. The Ards emphatically deny that they intended to sell any other property than that south of the branch and we believe the testimony to be convincing to that limitation. In addition there was testimony of the neighbors and people living in the vicinity for many years to the effect that the Nagys immediately took possession of all of the property from the branch to the south boundary line of the Sziszaks on the north which included the five acres in dispute; that a home was built on the land by Nagy, Sr. within approximately six months after purchase, and his family moved on the property; that there was a boundary fence between Szis-zak on the north and Nagy on the south, and that this boundary fence was the north boundary of the five acres in dispute. Further, that within two years after the purchase of the land by the Nagys from the Ards, Nagy, Jr. built a home on the very five acres in dispute, which was still standing at the date of the trial and which had tenants in it. The property from the branch north included the five acres in dispute which was bounded on the north by the common line between the Nagy and the Sziszalc property and was known as the “Ard Farm” and that is exactly what the testimony shows was intended to be sold to the Nagys. This testimony was admissible to show no intent and no consent, no meeting of the minds, insofar as an inclusion of this five acres in the description contained in the deed from the Ards to the plaintiff.
There is also the positive testimony of Taft Faust, present Sheriff of Livingston Parish, and at that time clerk of court and ex-officio notary public, who prepared the deed from the Ards to the Nagys. He testified that Mrs. Ard told him she wanted to sell the property which she owned north of the branch and he understood to the Sziszak line. He did not look up any titles, but said that Mrs. Ard had the titles and told him she thought they had gotten it from the Thomases. He was positive in his testimony that the land she intended to sell was all she owned north of the branch. It is clear that if the Ards intended to sell the five acres in dispute to the Nagys in 1945, they would not still be intending to. sell it to the plaintiffs in 1954.
Under the evidence proven in this record,, the codal articles and the jurisprudence, supra, defendant is entitled to a judgment rejecting the demands of the plaintiffs that they be decreed the owners of the five acres in dispute,
Accordingly, the judgment of the lower court will be reversed and it is now ordered, adjudged and decreed that the demands of. the plaintiffs be dismissed at their costs.
Reversed.