AYRES, Judge.
This is primarily an action in boundary instituted for the purpose of having judicially fixed the boundary between plaintiffs’ and defendant’s properties. Plaintiffs additionally seek to recover damages for an alleged tortious cutting and removal of timber, as well as damages done to young growing timber on plaintiffs’ lands.
Plaintiffs, alleging that they are the owners of NWj4, Section 22, and Ei/¿ of NEj4, Section 21, Township 8 North, Range 8 West, Louisiana Meridian, less 22 acres situated in the southern portion of said property, and alleging that defendant is the owner of SE14, Section IS, and SW}4> Section 6, Township 8 North, Range 8 West, Louisiana Meridian, immediately north of and adjacent to their property, and further alleging that the boundary between said properties had never been fixed, either judicially or extrajudicially, prayed that a surveyor be appointed to survey said boundary, that a procés verbal thereof be filed in court, and, in due course, the survey be homologated. Plaintiffs further prayed for damages sustained by an alleged trespass upon their lands.
• Pursuant to the aforesaid, the court appointed A. J. Brouillette, a registered surveyor, who made the survey as prayed for arid filed, his procés verbal in court. After due proceedings, the survey was homolo-gated and made the judgment of the court and defendant condemned to pay plaintiffs damages in the sum of $80, together with all costs, including the cost of the survey.'
The defendant has appealed. Plaintiffs, in answering the appeal, have prayed that the award of damages be increased to $550.
No issue is presented upon this appeal as to Brouillette’s survey nor as to' its homolo-gation, the correctness of which is conceded by both plaintiffs and defendant. Only two matters are presented for consideration. These are the taxation of costs, particularly the cost of the survey, and the award of damages.
The facts as disclosed by the record pertinent to the first of these issues may be briefly stated. Plaintiffs first filed on September 1, 1955, an action in damages for an alleged trespass by defendant upon their aforesaid property. In defendant’s answer to that demand, it became obvious that a dispute existed as to the boundary between their ' respective properties, whereupon plaintiffs entered a voluntary non-suit and requested that defendant join them in making a survey and establishing the boundary between their properties and suggesting that the expense thereof be borne equally by plaintiffs and defendant.
Plaintiffs’ letter of- June 15, 1956, addressed to defendant, bearing on this subject reads as follows:
“June 15, 1956
“Louisiana Long Leaf Company Fisher, Louisiana
“Re: NWJ4 of Sec. 22 and the East Vi of the NE14 of Sec. 21, all in Township 8 North, Range 8 West of Natchitoches Parish, La., less 22 acres.
“Gentlemen:
“I am writing you on behalf of myself and my father, G. F. Thomas, Sr., we be *110 ing the owners of the property described in caption. You are the owners of the property adjacent to and situated immediately north of the above described tract. Your company, through its employees, has marked two lines, hacked and painted, as the dividing line between the property owned by us and that owned by you.
“The oldest line marked by your company is situated somewhat north of the more recent line and, during the month of August 1955, your employees went upon the land lying between the two lines and cut timber. It is our contention that the original line and the actual dividing line between our properties is that situated the furtherest to the north. If this is actually the correct line between the property owned by the company and that owned by my father and me, then you have, by going south of that line and cutting timber, committed a timber trespass and you should be willing to pay us for the value of such timber as you have cut and removed as well as such other damages as we have sustained.
“Inasmuch as there appears to be a question as to the correct location of the boundary line, we would be glad to have- some licensed surveyor, agreeable to both sides, to survey and establish the correct dividing line between our respective properties. If the survey shows that your company has, in fact, gone south of the dividing line between our properties and cut and removed and otherwise damaged our property, we will expect you to pay us for such damage.
“If it appears that you have not trespassed on our property, we, of course, would expect to recover no damages.
“We, therefore, offer to have the above survey made by a disinterested and mutually acceptable licensed surveyor of this State for the purposes of putting at rest, the dispute over the correct location of the boundary.
“We would be glad to divide the cost of such a survey with you, our paying one-half of the cost of the survey, and your company paying one-half of the cost of the survey.
“I wish you would please advise me within ten (10) days from this date, whether or not you would be willing to have the survey made at the joint expense mentioned above and whether or not you would be willing to pay for such damages we have sustained in the event that the survey should show that you have, in fact, trespassed upon our property.
“If you are not willing to have the boundary line settled by an amicable survey as proposed above, we have no alternative but to file suit for a judicial fixing of the boundary and also seeking such damages as we believe we have sustained on account of the trespass that we believe you have committed. If within ten days from this date I have not heard from you, appropriate proceedings in line with the above will be instituted.
“Yours very truly,
“GFT :dh Gerard F. Thomas, Jr.”
In declining plaintiffs’ invitation and suggestion for a joint survey at their mutual expense, defendant communicated the following reply:
“July 2, 1956
“Mr. Gerard F. Thomas, Jr.
“P. O. Box 305
“Natchitoches, Louisiana
“Dear Mr. Thomas:
“Replying to your letter of the 15th in regards to the property line of lands owned by yourself and your father, G. F. Thomas, Sr., and the Louisiana Long Leaf Lumber Company. This being the section line between Sections 15 and 16, 21 and 22, Township 8 North, Range 8 West.
“Mr. Thomas, we feel that you have been misinformed and mislead as to the facts in connection with this line.
“This line previously mentioned was established some eight years ago, during the time the Foster heirs owned the property that you now own. All corners in question were proven and established, and conform in every way to the Government *111 Survey made by Ruffin B. Paine in 1885.
“This survey was made and approved by two licensed State Surveyors, and we have a plat in our files, which we would be glad to show you if you would care to see it.
“As has been stated, this work was done when the Foster heirs owned this property. Mr. Melton Foster, I believe it was who lived on the old home place at the time, was familiar with the work that was being done and was there when the corner was checked and established at the northwest corner of Section 22. Whoever had charge of the cutting of the timber on the Foster place since the line was established accepted the present line and have cut the timber about three times since.
“As to the line north of the present line, we are not sure that our people marked this line. We might have been implicated and might have made some blazes, but we are sure that we were not responsible for all the blazes that appear above this line. And as to the old blazes, you will find along the present marked line some of the oldest marking there is there. This is just east of the northwest corner of Section 22.
“Mr. Thomas, we appreciate your spirit of cooperation in being willing to enter into a joint survey and assuming part of the expenses, we would like to find more of that. We certainly don’t want to appear uncooperative in this matter, but due to the fact that we have gone to considerable expense in getting this line located and established, we don’t feel inclined to enter into another survey.
“Yours very truly,
Louisiana Long Leaf Lumber Company
(Signed) M. R. Harrison
M. R. Harrison
Land Department”
“MRH/nc
Thus, it is shown two lines existed between plaintiffs’ and defendant’s properties, both of which were contended by plaintiffs to have been placed there by defendant, and that in its timber operations defendant had cut to the southernmost of these lines and, therefore, on plaintiffs’ property, they contending that the northernmost of these lines constituted the true and correct boundary.
In the meantime, in September, 1955, the defendant caused to be made a private survey by one R. V. Leone of the section lines which constitute the boundary between plaintiffs’ and defendant’s properties. This survey was entirely ex parte, without notice to or knowledge of plaintiffs. Rather than join plaintiffs in a survey to have the boundary between their properties fixed extrajudicially, the defendant chose to rely upon the survey made by Leone.
LSA-C.C. Art. 662 provides:
“Every proprietor has a right to make an inclosure around his lands”,
and Art. 663 says:
“He may compel his neighbors to fix and mark the limits of their estates which are contiguous to his.
“The limits are established, and boundary stones or posts placed at their joint expense.”
Art. 823 further provides that:
“When two estates or lands contiguous, in cities or in the country, have never been separated, or have never had their boundaries determined, or if the bounds, which have been formerly fixed, are no longer to be seen, each of the owners of the contiguous estates has a right to compel the other to fix the limits of their respective properties.”
If the parties are of full age, the fixing -of new boundaries or the investigation of old ones may be made through the mutual consent of the parties, that is, ex-trajudicially. LSA-C.C. Art. 832. Even an extrajudicial fixing of boundaries must' *112 be done by á qualified surveyor. LSA-C.C. Art. 833 states:
“Whether the limits be fixed judicially .or extra judicially, it must be done by a sworn surveyor of this State, who shall be bound to make a proces verbal of his work in the pres-énce of two witnesses, called for the purpose, who shall sign the proces verbal with him, or mention shall be made therein of the causes which prevented them from signing.”
A survey, not preceded by or complying with the provisions of the Code, particularly the requirements contained in the aforesaid articles, is null and .vciid. In that connection, LSA-C.C. Art. 838 states:
“It is forbidden to every owner of lands to fix-the limits between'him and his adjoining neighbors, without giving them notice to be present; and, without this formality, every such proceeding is null, and will produce no effect against his neighbors, who, besides, have their action for damages against him, if they have suffered any injury thereby.”
There is no' question but that a serious dispute existed between plaintiffs and defendant as to the exact location'of the boundary line between their respective properties, particularly in view of the-existence of two lines. The record reveals that plaintiffs urgently sought an amicable settlement of this dispute, as evidenced by the contents of their aforesaid letter addressed to the defendant proposing a joint survey by a surveyor mutually agreeable to both parties and at their joint expense. To plaintiffs’ suggestion, defendant diplomatically but yet firmly declined and refused to enter into such a survey.
The provisions of LSA-C.C. Art. 663, providing that boundaries between contiguous estates are established at the joint expense of the proprietors, do not apply where a party declined, to settle the boundary amicably with the adverse owner and forced him to resort to litigation, and equity requires he should bear the burden of the cost,-if cast. ,Andrews v. Knox, 10. La.Ann. 604; Lacour v. Watson, 12 La.Ann. 214; Williams v. Close, 14 La.Ann. 737; Gaude v. Williams, 47 La.Ann. 1325, 17 So. 844; Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Fairbanks v. Louisiana Central Lbr. Co., La.App., 163 So. 209;. Lirette v. Duplantis, La.App., 65 So.2d 639.
Under the jurisprudence, the cost ‘ of the survey, as well as the cost of this suit,’ should, therefore, be taxed against the defendant.
That the survey of the court-appointed surveyor was in accord and coincided-with-the survey of Leone is unimportant and immaterial since Leone’s survey was without compliance with the provisions of the LSA-Civil Code and, under Article 838, null and void and without effect.
On the question of damages, counsel urges the application of the Latin maxim, “de minimis non curat lex”, and asserts that the damages sustained by plaintiffs, if any, were negligible. The damage sustained was due to the cutting of timber by defendants on their property and throwing the tops in felling the trees upon plaintiffs’ lands, damaging and destroying a growth of young timber, some of which was as large as six inches in diameter. The damage and destruction complained of were caused from the cutting and the throwing of tops of some 11 or 12 trees upon plaintiffs’ property. The replacement of the young timber damaged and destroyed would require reforestation and several years before the new growth would attain the size of the timber damaged and/or destroyed.
No purpose could be served by a detailed discussion of the voluminous evidence, but it suffices, in our opinion, to support the conclusions reached by the trial court. No manifest error has been pointed out and his findings are entitled • *113 to great weight. The judgment appealed is, accordingly, affirmed at appellant’s cost.
Affirmed.