LANDRY, Judge.
Plaintiffs, Mr. and Mrs. Leo Miley, instituted this boundary action against defendants, Mr. and Mrs. William Jerry Walker, to establish a line of demarcation between properties belonging to plaintiffs and the contiguous estate of defendants adjoining and bounding plaintiffs’ lands on the north. Defendants filed a third party petition calling ttpon their vendors, Harry L. Miley (son of plaintiffs), and his wife, Dorothy Brocata Miley, and one Joseph A. Thompson (owner of property adjoining defendants’ property on the north), to refund defendants’ purchase price in the event of defendants’ eviction from the property purchased from third party defendants, Harry L. Miley and wife. Defendants’ third party demand against his vendors, Mr. and Mrs. Harry L. Miley, was dismissed on exception to the jurisdiction ratione personae when it was shown said vendors were non-residents of Louisiana and in fact lived in the State of Tennessee. Defendants’ third party complaint against Joseph A. Thompson was dismissed upon exception of no cause of action. After trial on the merits, judgment was rendered below fixing the common boundary between plaintiffs’ and defendants’ adjoining properties at a point 56.5 feet south of *40 the line advocated by plaintiffs as the true boundary and from said unfavorable determination plaintiffs have appealed.
The trial court first appointed J. C. Ker-stens, Civil Engineer, to survey the adjoining estates and make a proces verbal of the results thereof. Mr. Kerstens, however, was relieved on the showing he had previously surveyed the property for appellants and was related to one of the appellants. The trial court then appointed O. C. Hollister, Civil Engineer and Registered Land Surveyor, who surveyed the land claimed by defendants and made a map showing the results of his survey, the reproduction of which said map, attached hereto and made part hereof, reveals two distinct lines, one designated “1-2”, asserted to be the correct boundary by plaintiffs, and line “A-B” alleged to be the true dividing line by defendants.

*41 In the year 1935, appellants acquired a tract of land containing approximately 15 acres described as follows:
All that certain tract or parcel of land situated in the Parish of Livingston, State of Louisiana, and more specifically described as follows, to-wit:
(15) Fifteen acres, more or less, in Section (47) Forty-Seven, Township Six, South, Range Two East described as follows:
(1) “A certain tract or parcel of land, situated in the Parish of Livingston, Louisiana, one half mile North of the Town of Denham Springs, La. containing (7) Seven Acres, bounded North by vendee, East by Denham Springs and Plainview Public Road, South by Schenk, and West by Colton’s creek, and known as the Lizzie Duffy Homestead.”
(2) “A certain tract of land, situated in the Parish of Livingston, Louisiana, containing (8) eight acres, more or less, bounded North by Mrs. Eva Carmena, East by Denham Springs-Plainview Public road, South by Bayou or Mrs. Lizzie Duffy, and West by Colton’s Creek, and being the same property acquired by vendors from William F. Brown, under date of November 7, 1932.”
Subsequent to the aforesaid acquisition, in the year 1944, appellants sold to one James A. Stringfield a 'triangular shaped parcel of land, taken from the hereinabove described 15 acre tract, on which was situated a store building, under the following description, to-wit:
A certain tract or parcel of land situated in the 2nd ward of Livingston Parish, Louisiana, and more particularly described as being a triangular tract of land in Sec. 47, T6S, R2 East and having a frontage of 195 feet on Denham Springs North Blacktop highway by a depth on south side of 125 feet, by 220 feet on line between this property and Carmena on west side. Being the same property acquired by vendor from Amite River Bank, together with all buildings and improvements thereon.
Also the present stock of merchandise in the Store and all furniture and fixtures and machinery thereon.
From the foregoing description in the sale to Stringfield it is evident that, although the dimensions of the three sides of the triangular lot sold are each designated as a specific number of feet, no established markers or landmarks were given or referred to as a starting point for any of the recited dimensions. Moreover, the evidence is conflicting on the issue of whether the stated dimensions were actually measured with a 50-foot tape or whether they were determined by pacing the distances given in the deed. It is undisputed, however, that following Stringfield’s purchase he immediately took possession of the property as far south as the line marked by a large pine tree and an iron bar, said line being designated as “C-D” on the Hol-lister map. It is further conceded that on the land possessed by Stringfield there was situated a well and feed house which said purchaser used from the date of his acquisition from plaintiffs until his subsequent transfer to Thompson. The well and feed house (now a garage) are situated on the tract measuring 56.5 feet front along the west side of Main Street or River Road, Denham Springs, Louisiana which plaintiffs now contend was not included in the sale to Stringfield.
In 1947, Stringfield sold to Joseph A. Thompson, by description, the same property acquired from plaintiffs. Thompson immediately took possession of the property including the disputed strip, 56.5 feet in width, on which the well and feed house were located. The well, it may be interjected here, was used to furnish water to the store building on the Thompson property from Thompson’s purchase until Thompson connected to the municipal water distribution system some few years later.
*42 Subsequent to plaintiffs’ sale to String-field, in or about 1950, plaintiffs permitted their son, Harry L. Miley, to construct a '.brick home on the property adjoining 'Stringfield on the south notwithstanding no deed was then executed by plaintiffs to their son transferring the property on which the residence was constructed. In 1955, Harry Miley and his wife decided to sell their home and ultimately an agreement was ■made with defendants for the purchase of the residence and surrounding grounds. By -deed dated August 1, 1955, plaintiffs conveyed to their son and daughter-in-law, Mr. .and Mrs. Harry L. Miley, a tract of land described as follows:
A certain lot of ground, situated in Section 47, T 6 S, R 2 E, Livingston Parish, Louisiana, measuring one hundred sixty (160) feet on the West side of Blacktop Road (Extension of Old Main Street) by a depth of one hundred sixty-six (166) feet on the north side and one hundred sixty-eight (168) feet on the south side; the west side measuring one hundred fifty nine (159) feet, bounded on the North by J. A. Thompson, on the East by black top road (Extension of Old Main Street), south and West by vendors.
Being a portion of the same property acquired by deed of record in COB 50, page 414, Livingston Parish Conveyance Records.
Included in the act of sale from the senior Mileys to the son and daughter-in-law, is the following clause:
The parties declared to me, Notary, that the above lot, unimproved, was delivered into the possession of purchasers in the year 1950 and the consideration hereinafter mentioned was paid during that year but, through inadvertence, they had neglected to pass a formal act of sale therefor.
The day following their acquisition from plaintiffs, namely, August 2, 1955, Harry L. Miley and wife, by deed witnessed by plaintiffs, Leo and Ruth M. Miley, transferred to defendants the following described property:
A certain lot of ground, together with all buildings and improvements thereon, situated in Section 47, T 6 S, R 2 E, Livingston Parish, La. measuring one hundred sixty (160) feet on the west side of Black Top Road (extension of Old Main Street) by a depth of one hundred sixty-six (166) feet on the north side and one hundred sixty eight (168') feet on the south side; the west side measuring one hundred fifty-nine (159) feet, bounded on the north by J. A. Thompson, on the east by Blacktop Road (extension of Old Main Street), South and West by Mrs. Ruth Morgan Miley, et ux. (sic)
Acquired by deed dated 1 August 1955 from Mrs. Ruth M. Miley et ux (sic) recorded in COB 77, Livingston Parish Conveyance Records.
Our careful consideration of the record leads to the conclusion that all parties concerned were uncertain as to the correct location of the boundaries of the Thompson property which ambiguity resulted in an error in the description of the property intended to be conveyed by plaintiffs to defendants.
In substance appellants maintain the error resulted from an inaccuracy respecting the recited dimensions of the lot sold to defendants. In this regard appellants contend defendants’ deed incorrectly states the northern boundary of defendants’ tract to be 166 feet in length whereas it should read 125 feet considering it was the intention of the parties to buy and sell a parcel of land bounded on the north by Thompson and Thompson’s previously recorded deed plainly shows a southern boundary of 125 feet. It is to be noted, however, the Hollister map shows Thompson’s south boundary to be 130 feet in length running from point “4” to the ditch forming the boundary between plaintiffs’ original 15 acre tract and the Carmena property adjoining plaintiffs’ *43 lands on the West. Plaintiffs argue that Stringfield and Thompson have possessed a distance of 56.5 feet south of the correct southern boundary of the Thompson tract and to fix the northern boundary of defendants’ property at the line “C-D” as contended by defendants, is to leave a gap of 56.5 feet between defendants’ and Thompson’s estates notwithstanding a clear intent to sell defendant property bounded on the north by Thompson. A further result of establishing defendants’ north line as “C-D”, according to appellants, is to encroach upon appellants’ property to the south a distance of 56.5 feet.
Based on the foregoing premise, appellants urge the property intended to be sold defendants is designated on the Hollister map as commencing at point “4”, thence running along the west side of the River Road or Main Street southerly a distance of 166 feet to point “1”; thence westerly to point “2” a distance of 168 feet; thence northerly a distance of 96 feet to the ditch forming the boundary between plaintiffs’ property and that of Carmena on the West; thence along the boundary ditch to the line “3-4” thence along line “3-4” to point “4”, the point of commencement.
The fallacy of this argument, however, is readily apparent. A glance at the Hollister map readily reveals that the only way the line “1-2”, relied upon by plaintiffs as being the southern boundary of defendants’ property, can be established is to measure 166 feet along line “3-4” to find the northwest corner of defendants’ tract and thence measure 159 feet southerly to point “2”. The record and Hollister map, however, reveal that point “3”, lying 166 feet west of point “4”, is located 36 feet northwest of an old and well-defined ditch separating plaintiffs’ original 15 acre tract from property of Stanley Carmena on the West. Plaintiffs readily concede point “3” is not the correct northwest corner of defendants’ tract acknowledging said point would include in defendants’ deed a triangular shaped portion of ground containing an area of 1200 square feet belonging to Stanley Carmena and situated to the west of plaintiffs’ original 15 acre tract as shown on the Hollister map. The concession that point “3” is not the northwest corner of defendants’ tract is fatal to appellants’ position that line “1-2” is the proper boundary between plaintiffs’ and defendants’ adjoining estates inasmuch as line “1-2” cart only be established consistently with the dimensions recited in defendants’ deed by previously establishing point “3” as defendants’ northwest corner.
On the other hand, however, defendants contend the intended boundaries are indicated by lines “A-B-C-D” as shown on the-Hollister map. Defendants point out tha-t the measurements called for in their deed' coincide with those indicated between points “A-B-C-D”. In this connection, it appears line “C-D” measures 166 feet and line “A-D” measures 160 feet as called for in. defendants’ deed. Line “A-B” measures. 167 feet (only one foot less than set out in: defendants’ description). Line “B-C”, a: broken line which follows a fence from point "B” to the ditch along the Carmena property line, and thence follows the Car-mena property line to point “C” is exactly 159 feet as described in the sale from plaintiffs to defendants.
It will be noted that although the description in the deeds from plaintiffs to their son and daughter-in-law and from the latter to defendants show the north line of defendants’ tract to be 166 feet in length, the recorded description of the Thompson tract calls for a south line of 125-feet. It is obviously for this reason that plaintiffs, who contend the line from, point “4” to the Carmena line is the common, boundary between defendants and Thompson, admit point “3” is not the correct northwest corner of defendants’ property. As herein previously shown, if point “3” is not the nothwest corner of appellees-’ property then line “1-2” cannot be correct,, for the latter depends on the former.
The testimony of the Court appointed Surveyor, Hollister, reveals there- are- no *44 monuments or markers of any kind whatsoever on the corners and lines designated “1-2-3-4” and the evidence indicates beyond question that neither the Mileys, the Walkers nor the Thompsons have ever treated lines “1-2-3^-” as the boundaries of the three contiguous estates. Moreover, it is shown tlie line “1-2” advocated by appellants would pase within approximately one foot of the south side of defendants’ residence and line “3-4” runs through Thompson’s driveway leading to the garage situated on the 56.5 foot tract lying between points “D-4” claimed by Thompson.
On the other hand, however, Hollister found line “C-D” to be marked by an old iron bar set at point “D” and along which line he found a 30" pine tree identified by several witnesses as the boundary marker pointed to by appellants when the sale was made by appellants to Stringfield and also when appellants’ son and daughter-in-law sold to defendants. Hollister also found point “B” marked by an old cross tie set at the corner of a fence and point “A” designated by an iron pipe.
It further appears there is but little doubt all parties concerned regarded the line “A-B” as the correct boundary between plaintiffs’ and defendants’ adjoining properties. When defendants purchased from Harry Miley and his wife, defendants were informed by their said vendors that the south boundary of defendants’ tract lay within a few feet of the fence shown on Hollister’s map as running from point “B” easterly to Main Street and south of the line “A-B”. Mrs. Walker planted flowers along the fence and used a clothes line erected near the fence by her vendor, Harry Miley. Following defendants’ purchase, plaintiffs caused cattle to be driven from the rear of their property to the highway at a point just north of the fence and when Mrs. Walker protested she was advised by plaintiff, Leo Miley, that the fence was not the boundary. On this occasion plaintiff pointed to the iron marker at point “A” and informed Mrs. Walker that that was' the boundary. Thereafter defendants accepted this marker as their south line. Subsequently, Mrs. Walker attempted to purchase from appellants the wedge-shaped parcel lying between the line “A-B” and the fence and although the Mileys refused to sell, they made no claim at that time that the line “A-B” was not the boundary. We desire to make clear that the aforesaid undisputed facts are not related to show title by estoppel or adverse possession as no such issue has been raised herein. We deem them significant, however, in ascertaining the intention of the parties respecting the location and boundaries of the property sold.
It is settled jurisprudence that in all boundary actions the primary objective is to find some certain evidence of what particular land was intended to be conveyed. City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275. Equally appropos the case at bar is the principle that any ambiguity in a deed must be construed against the grantor. Hulin v. Hale, La.App., 137 So.2d 709, and in favor of the purchaser, Hanks v. Stutes, La.App., 85 So.2d 362.
Although an unambiguous deed cannot be varied by extraneous evidence, Properties, Inc. v. Beckman, La.App., 77 So.2d 161; Dupre v. Dupre, La.App., 72 So.2d 589, the actions of parties subsequent to a sale can be considered as indicative of the practical construction of an ambiguous deed, Texas Company v. O’Meara, 228 La. 474, 82 So.2d 769; Mestayer v. Cities Service Development Company, La.App., 136 So.2d 513. An obscurity or ambiguity in a sale is construed against the vendor and those who stand in his shoes. Mestayer v. Cities Service Development Company, La.App., 136 So.2d 513.
Applying the foregoing principles to the facts of the case at bar, we conclude there was obvious error in describing the bounds of the property purchased by defendants herein. The boundaries urged by appellants cannot reasonably or logically be made to *45 coincide with the intention of the parties. The fact that the description states the property is bounded on the north by property of Thompson is not determinative of the question here presented as appellants would have us hold. The description is admittedly inaccurate as to metes and bounds since, under either plaintiffs’ or defendants’ interpretation, the tract sold is bounded on the northwest by property of Stanley Car-mena, an important circumstance not mentioned in the deed. It is of further significance that the property was not surveyed prior to the sale to defendants and neither were the lines measured except, according to defendant William Walker, said defendant and his vendor, Harry Miley, walked off the line “A-B” and defendant, upon observing the fence a short distance to the south at that time thought the fence was the boundary. Defendant Walker further testified that Harry Miley showed him the large pine along the line “C-D” and advised defendant that the tree belonged one-half to defendant and one-half to Thompson. In this connection Stanley Carmena, appearing as a witness on behalf of defendants, testified he was present on the occasion when plaintiff Leo Miley and Stringfield measured the property purchased by Stringfield from plaintiffs in 1944 and on this occasion plaintiff pointed out to Stringfield that this same pine tree stood on the south line of the property intended to be sold.
The property lying between the points “A-B-C-D” coincide almost exactly with the recited dimensions stated in defendants’ deed. The corners of the property as thus bounded are indicated by permanent markers discovered by the surveyor when he ran the lines pursuant to his appointment by the trial court. At the time plaintiffs sold to their son, Harry, plaintiffs owned considerable property lying to the south of the residence in which their son lived and therefore it appears quite unlikely they would have knowingly placed the southern boundary of the homesite only one foot south of the house, especially so since it was their mutual intention to convey a lot having a front of 160 feet on a public street. In this regard defendant Walker understandably testified that had he had the slightest indication the southern boundary ran within one foot of the house he would not have made the purchase.
We conclude that at the time of sale the parties unquestionably were of the opinion the line “C-D” was Thompson’s south line. It is acknowledged that Thompson claims his 19'5 feet of frontage on Main Street or River Road commences at point “D” and runs northerly therefrom and he so testified in the trial below. Whether in fact Thompson’s south line lies between points “C-D”, of course, cannot be decided in this boundary action since Thompson .is no longer a party to these proceedings.
Appellants maintain the learned trial court erroneously assessed all costs herein against appellants and argue that defendants’ refusal to amicably settle the boundary dispute renders defendants liable for all costs.
As a general rule the costs of survey incurred in a boundary action are to be divided between the owners of the adjoining estates. LSA-C.C., Article 663. Where, however, the defendant resists the demand to fix a common boundary and compels a suit, the provisions of LSA-C.C. do not apply and the defendant is compelled to pay the whole cost of survey. Christen v. Coulon, La.App., 94 So.2d 47.
Where, however, there is a valid dispute between the parties which cannot be settled except by judicial determination of the boundary and the refusal of one party to amicably settle cannot' be said to be arbitrary or capricious, the costs of the boundary suit should be borne equally by the parties. Thomas v. Louisiana Long Leaf Lbr. Co., La.App., 113 So.2d 108; Girard v. Donlon, La.App., 127 So.2d 761. Therefore, the judgment of the trial court will be amended to assess the trial costs *46 of this action equally between appellants and appellees.
We believe, however, the present case justifies imposition of the costs of this appeal against appellant alone considering appellants have utterly failed to maintain their position and appellees have prevailed upon appeal. Sharpless v. Adkins, La.App., 22 So.2d 692.
It is, therefore, ordered, adjudged and decreed the judgment of the trial court casting appellants for all costs be and the same is hereby annulled, reversed and set aside and judgment rendered herein casting appellants, Mr. and Mrs. Leo Miley, and appellees, Mr. and Mrs. William Jerry Walker, in solido, for all costs incurred in the trial court, including the cost of survey, and casting appellants, Mr. and Mrs. Leo Miley, in solido, for all costs of this appeal.
It is further ordered, adjudged and decreed that except as hereinabove amended, the judgment of the trial court is affirmed.
Amended and affirmed.