LANDRY, Judge.
This appeal is by plaintiffs, Leo Miley and his wife, Ruth Morgan Miley, from the judgment of the trial court rejecting and dismissing their petitory action against defendants, Joseph A. Thompson and his spouse, Jesse Wheat Thompson. In their petition plaintiffs prayed for recognition as owners of a tract of land fronting 56 feet on the west side of River Road (Main Street), situated within the municipal limits of the City of Denham Springs, Livingston Parish. We find that the trial court correctly determined defendants to be owners of the property in dispute and affirm the judgment rendered below.
In 1935 plaintiffs purchased a 15 acre tract of land situated in Denham Springs, more particularly described as follows:
“All that certain tract or parcel of land situated in the Parish of Livingston, State of Louisiana, and more specifically described as follows, to-wit:
Fifteen (15) acres, more or less, in Section (47), Township Six South, Range Two East, described as follows:
(1) A certain tract or parcel of land situated in the Parish of Livingston, Louisiana, one half mile north of the Town of Denham Springs, Louisiana, containing (7) seven acres, bounded North by Vendee, East by Denham Springs and Plainview Public Road, South by Schenk, and West by Colton’s Creek, and known as the Lizzie Duffy Homestead.
(2) A certain tract of land situated in the Parish of Livingston, Louisiana, containing (8) eight acres, more or less, bounded North by Mrs. Evan Carmena, East by Denham Springs, Plainview Public Road, South by Bayou or Mrs. Lizzie Duffy and West by Colton’s Creek and being the same property acquired by vendors from William F. Brown, under date of November 7, 1932.”
*642 Subsequently, in 1944, plaintiffs conveyed to one James A. Stringfield a triangular shaped parcel of land taken from the above described IS acre tract and described as follows :
“A certain tract or parcel of land situated in the 2nd Ward of Livingston Parish, Louisiana, and more particularly described as being a triangular tract of land in Sec. 47, T 6 S, R 2 East and having a frontage of 195 feet on Denham Springs North Blacktop Highway by a depth on South side of 125 feet, by 220 feet on line between this property and Carmena on the West side. Being the same property acquired by vendor from Amite River Bank, together with all buildings and improvements therein.
Also the present stock of merchandise in the Store and all furniture and fixtures and machinery thereon.”
By duly authenticated deed, Stringfield, in 1946, sold defendant, Joseph A. Thompson, the same triangular shaped lot acquired from plaintiffs, said conveyance being by description identical to that in the deed from Miley to Stringfield.
Plaintiffs permitted their son, Harry Mi-ley, to build a home south of Thompson’s triangular lot on adjoining property belonging to plaintiffs and fronting on River Road or Main Street. On August 1, 1955, plaintiffs conveyed to their said son title to the land on which his residence stood, said transfer describing the land sold as follows :
“A certain lot of ground, situated in Section 47, T 6 S, R 2 E, Livingston Parish, Louisiana, measuring one hundred sixty (160) feet on the West side of Blacktop Road (extension of Old Main Street) by a depth of one hundred sixty-six (166) feet on the south side; the west side measuring one hundred fifty-nine (159) feet, bounded on the North by J. A. Thompson, on the East by blacktop road (Extension of Old Main Street), south and west by vendors.
Being a portion of the same property acquired by deed of record in COB 50, page 414, Livingston Parish Conveyance Records.”
Harry Miley sold the property thusly acquired from his said parents to Mr. and Mrs. William Jerry Walker, by description coincident with his act of purchase, on August 2, 1955.
In Miley v. Walker (La.App.1963), 159 So.2d 38, we were called upon to consider the dispute which arose between plaintiffs herein and the Walkers concerning the location of the boundary between the Walker and Miley properties resulting from the hereinabove enumerated transfers. Our decision, see 159 So.2d 38, awarded the Walkers title to an irregular shaped parcel of land fronting 56.5 feet on Main Street taken from the northern portion of the remaining Miley property. In effect our decree fixed the northern boundary of the Walker property at a point 56.5 feet farther south than was indicated in the Act of Conveyance from the Mileys to their son and from the son to the Walkers.
In the prior case, we held, inter alia:
“We conclude that at the time of sale the parties unquestionably were of the opinion the line “C-D” was Thompson’s south line. It is acknowledged that Thompson claims his 195 feet of frontage on Main Street or River Road commences at point “D” and runs northerly therefrom and he so testified in the trial below. Whether in fact Thompson’s south line lies between points “C--D”, of course, cannot be decided in this boundary action since Thompson is no longer a party to these proceedings.”
Thus, it is readily observable that in the previous instance we were asked to determine only the boundary between the Walker and Miley estates. Resolution of the present controversy calls for determination of the boundary constituting the Walker north line and the Thompson south line.
*643 In substance plaintiffs maintain that when this court in the prior case fixed the northern boundary of the Walker property as the line between the points C and D as: shown on the attached map, we in effect recognized plaintiffs ownership of that certain lot measuring 56 feet front along the west side of Main Street and lying between the points marked C, D, 3 and 4, as indicated on the map made part of this opin *644 ion. Plaintiffs’ position in this regard is simply that the land acquired by the Thomp-sons consists of the triangular tract shown on the map as measuring 195 feet along the west side of Main Street and when our prior decree moved the Walker’s north line 56 feet southerly, plaintiffs are entitled to recognition as owners of the 56 foot parcel intervening between the Thompson and Walker estates.

*643

PROCES VERBAL OF ABOVE SURVEY:
July 2, 1962,1 sent registered notices to Mr. Leo Miley and to Mr. William Jerry Walker, both of Dent
*644 Conversely, the Thompsons resist plaintiffs’ demands asserting error in the deeds from plaintiffs to Stringfield and from said vendee to the present defendants. Respondents herein maintain it was intended that the boundary to their property run along the line marked C-D, and that the descriptions in the deed do not reflect the true intentions of the parties. On these grounds defendants prayed for reformation of the deeds to them and their author in title, Stringfield, recognizing and establishing the south line of their property as the northern boundary of the Walker property, such being the intent when plaintiffs initially sold to Stringfield and when Stringfield sold to defendants.
On this appeal appellants dually claim: (1) The trial court erred in permitting introduction of parol evidence to establish the south line of defendant’s property as the line C-D, contrary to the general rule of law that parol evidence is inadmissible to vary, add to or substract from a written document; and (2) Alternatively, the evidence adduced by defendants does not support respondent’s assertion of error in the deeds by which respondent acquired title.
Appellants’ first contention finds ready disposition. It is settled law that pursuant to an allegation of error, parol evidence is admissible to vary the recitations of a deed in order to reform the conveyance in accord with the true intent of the contracting parties, even where the terms of the deed are clear and unambiguous. Blackwell v. Nagy, La.App., 122 So. 2d 903, and cases therein cited.
In the present case appellees expressly plead error in a supplemental and amended petition and specifically requested reformation of the deeds in question to fix the south boundary of their property as the line C-D, in order that the description accord with the express intention of the respective vendors and vendees. Therefore, parol evidence was admissible herein to prove the alleged error. Blackwell v. Nagy, supra.
Considering the alleged inadequacy of the testimony adduced by defendants in support of their plea for reformation, we note first that plaintiff Leo Miley testified he constructed a house and store on the triangular portion of the property shown on the map in 1940, and resided thereon until approximately 1945, when he sold to String-field, since deceased. Plaintiff also stated he dug a well in the disputed area south of the triangular portion sold Stringfield and constructed thereon a feed house surrounding the well, and also a garage. According to plaintiff, he maintained a small general store on the triangular lot and among other merchandise, sold feed which he stored in the feed house. When Stringfield purchased the triangular parcel, Miley and said purchaser measured with a steel tape from the apex of the triangle (situated near the culvert shown at the extreme north end of the map), southerly along the road a distance of 195 feet. Returning to the same starting point, they then measured 220 feet along the ditch separating the triangular plot from the property of Carmena to the west. Miley also testified it was agreed between Stringfield and himself that the feed house was not included in the sale and that the south line of the property being conveyed would separate and run between the main house and the feed house as Miley desired to keep the feed house for his son. Nevertheless, Miley testified he informed Stringfield that the latter could use the well, which Stringfield did during his entire occupancy of the premises. Mr. Miley concedes the well is no longer in use as all parties involved herein presently use water from the municipal supply. Mr. *645 Miley stated also that some sixteen years after Thompson purchased the triangular parcel, Thompson realized the error and requested plaintiff to convey the property in dispute herein and plaintiff declined. Plaintiff admitted Mr. Thompson kept a boat in the garage situated on the disputed strip and also maintained the area by mowing it regularly. Finally, plaintiff acknowledged that when he executed the deed to his son, he did so without measuring the tract conveyed. He explained that in so doing, he relied upon the representation of his son who was inexperienced in commercial matters and now realizes his son was in error in describing the property which the father conveyed to the son.
J. C. Kerstens, a surveyor and civil engineer, testifying as an expert, stated he surveyed the Thompson property in accordance with the titles of Thompson, Car-mena and Walker and found no ambiguity in the several descriptions. According to the recitations in the deeds, he found the starting point with ease and marked off the dimensions of the triangular plot 195 feet by 220 feet by 125 feet without difficulty. He found no markers delineating the bounds of the Thompson property as recited in the deed. He did find, however, a pipe marker at point D shown on the map.
Stanley Carmena, owner of the adjoining property situated west of the ditch forming the west boundary of the triangular parcel, recalled having witnessed the measurement of the property lines when plaintiff sold the triangular lot to String-field. He stated unequivocally Miley and Stringfield commenced measuring at the iron stob at point D, and from thence measured a distance north along Main Street. They then returned to the stob, measured the distance westerly therefrom to the ditch at the rear or west of the triangular plot. He did not see any measurement made along the ditch itself toward the apex of the triangle or in the direction of the culvert At the time he recalled Miley and Stringfield drove a wooden stob at point D. The next day he was present when Stringfield drove the wooden stob completely into the ground and drove an iron bar beside the wooden stob after remarking that the bar would remain in the event the stob rotted or was removed. Carmena testified further that after Stringfield purchased from plaintiff, Stringfield used the well house as a feed house and garage and also used the well as a water supply. He also recalled a net wire fence which ran from point C to D, said fence having been constructed before Miley’s acquisition and still remained at that location when Miley sold the first particle of land.
Mrs. Stringfield testified she and her husband intended to purchase the house, garage, feed house and well and believed all were situated on the triangular plot conveyed. She related that she and her husband purchased the store as a going business, including contents and sold feed which they stored in the feed house. She further stated she and her husband used the well and put one side of the feed house to use as a garage, without objection from plaintiffs. She understood that they purchased the land from the iron stob at the line C-D to a point 50 to 60 feet from the apex of the triangle. According to Mrs. Stringfield, she and her husband used the well as their only source of water supply and that plaintiffs never made use of the well after the sale.
Mrs. William Jerry Walker, defendant in the previous action, testified that when she and her husband purchased their lot in 1955, she believed the line C-D constituted the northern boundary thereof and that Thompson owned the property north of the line. She recalled that plaintiffs’ son, Harry, imparted to her that information. In accordance with this understanding, she planted shrubbery along line C-D believing it to be her northern boundary. She also related that since occupying the triangular lot, the Thompsons have always possessed the feed house and garage as their own.
Mr. Walker corroborated his wife’s testimony to the effect that he considered the *646 line C-D as the boundary between his and the Thompsons’ properties.
Defendant Thompson testified he purchased his home in 1947, and that the sale included the residence, feed house and property measuring 195 by 220 feet. For five years following his acquisition, he operated the store, sold feed from the feed house and used the well for water supply. He also stated that he and plaintiff Miley measured the south line between the points C-D and drove stobs at points C and D as related by Carmena. Until the dispute arose between plaintiffs and the Walkers some 16 years later, it was Thompson’s impression that from the line C-D the distance to the apex of the triangle along Main Street was 195 feet as recited in the deed. When he realized the recited distance did not extend to the culvert area, he asked plaintiff for a deed correction, which request plaintiff declined.
The record contains a stipulation to the effect that plaintiff received compensation from the State Department of Highways' for damages to his property including the area situated within the apex of the triangle as shown on the map.
It is readily ascertainable that the instant dispute may never have arisen but for the earlier controversy between present plaintiffs and the Walkers. We conclude, as did our brother below, defendant has borne the burden of establishing the error averred.
\
The evidence preponderates in favor of the conclusion that the south line of the parcel sold Stringfield was established at points C-D by the purchaser and seller involved. The surveyor’s investigation disclosed the iron pipe set by String-field as testified by Carmena. We note also Carmena’s testimony to the effect that at the time he observed Miley and String-field making the measurements testified to, the area in the vicinity of the culvert was low and overgrown with brush which circumstance no doubt accounts for the failure of the parties to measure the east line of the triangular plot all the way to the apex of the triangle.
Following the sale to Stringfield, his possession accords with the contention that the line C-D was intended as the southern boundary of the property conveyed to him. He possessed that area in its entirety exercising full ownership rights thereto to the exclusion of his author in title. Following his purchase, for many years no pretense of ownership was asserted over the disputed area by plaintiffs. Having established the mutual error, defendants are entitled to the reformation requested. Dufrene v. Tracy, 232 La. 386, 94 So.2d 297; Blackwell v. Nagy, supra.
Accordingly, the judgment of the trial court is affirmed at appellants’ cost.