365 So.2d 867 (1978)
VALHI, INC.
v.
ZAPATA CORPORATION and Zapata Development Corporation.
No. 9523.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Gordon, Arata & McCollam, John McCollam, New Orleans, Becnel & Becnel, Charles S. Becnel, Vacherie, for plaintiffappellee.
*868 Liskow & Lewis, Lafayette, William R. Pitts, New Orleans, and Gene W. Lafitte, Lafayette, Martin, Himel, Peytavin & Nobile, Lloyd R. Himel, Lutcher, for defendants-appellants.
Before LEMMON, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
Plaintiff, Valhi, Inc., the successor corporation of Southdown Land Company (Southdown), obtained a declaratory judgment relieving it from repurchasing for $1,190,000 two plantations it had sold. Zapata Development Corporation (Zapata) for $1,100,000. Zapata appealed.
A short time before taking title to the St. Clair and the St. Amelia Plantations in St. James Parish, Zapata learned of a title problem in the St. Clair chain. In the title insurance policy ordered by Zapata, the Title Insurance Company of Minnesota excepted from coverage claims arising out of the "Haydel Matter," the term that the parties used to describe the title defect. Because this sale was part of a larger transaction,[1] the closing proceeded as scheduled on November 19, 1974. Paragraph 2.18 of the agreement of sale and purchase was added to insure that the purchaser would not forego its right to receiving a merchantable title by signing the sale. It provided:
"St. Clair Plantation. Because of the fact that Erlic C. Haydel was married to Florence Dugas Calvey on June 30, 1953, and other facts, there is possibly an outstanding undivided ¼th interest in the St. Clair Plantation (item VB of Schedule II) (the `Haydel Matter'). Zapata shall cause Zapata Development Corporation to acquire the St. Clair Plantation and the St. Amelia Plantation (item VC on Schedule II) and the deed from SDL to Zapata Development Corporation shall be without warranty. SDL will deliver at the Closing a title policy from Title Insurance Company of Minnesota in the amount of One Million One Hundred Thousand Dollars ($1,100,000) but such title policy may make exception to its coverage for the Haydel Matter. SDL shall use its best efforts to have any exception arising out of the Haydel Matter removed. If such exception is not removed before November 20, 1975, then Zapata Development Corporation shall, no later than March 20, 1976, reconvey by deed without warranty the St. Clair Plantation and the St. Amelia Plantation to SDL and SDL shall pay Zapata Development Corporation the sum of One Million One Hundred Ninety Thousand Dollars ($1,190,000) in cash. The exception arising out of the Haydel Matter shall be deemed removed if such title policy provided for above shall be amended so that it contains no exception for the Haydel Matter and SDL shall give to Zapata Development Corporation, its successors or assigns, a general warranty covering the St. Amelia Plantation and the St. Clair Plantation; otherwise, such exception shall be deemed not removed. Zapata shall cause Zapata Development Corporation not to convey the St. Clair Plantation or the St. Amelia Plantation other than to an affiliate of Zapata or SDL prior to the time the exception arising out of the Haydel Matter is removed."
In the ensuing year Southdown officials sporadically attempted to resolve the Haydel exception and discussed various approaches to removing the exception from the policy. First, it attempted to convince the title company's attorney no defect in fact existed. It was not until July 1975 (some eight months after the sale) that Valhi contacted the title insurer's attorney and on October 3, 1975 the title attorney declined to remove the exception on a no defect basis. Valhi officers and their attorneys discussed two approaches to curing the title, namely, (1) obtaining quitclaim deeds *869 from the Haydel descendants; and, (2) filing a suit for judicial partition and buying out the Haydel interests at public auction. The first was rejected as too costly, while the second was not attempted because the time remaining to remove the exception was insufficient and further the realty may have been susceptible of division in kind.
Finally the Valhi representatives devised a method of removing the exception from the policy without curing the title. Valhi asked the title insurer to remove the exception guaranteeing it would execute a corporate indemnity agreement to the title company should any loss arise from removal of the exception. This indemnification was to be secured by mortgage on other Valhi real property. In effect Valhi bonded out the deletion of the exceptionit did not cure the title defect and thereby render it merchantable.[2]
By the time the details of this agreement were worked out, there was insufficient time before the November 20, 1975 deadline for the customary formal endorsement to the title policy to be delivered to Zapata. Thus the New Orleans attorneys drafted the following endorsement, obtained approval from a duly authorized representative of the title insurer, and sent this telefax message to Zapata:
"Item 21 of Schedule B of Policy No. Z344168, dated November 20, 1974, issued by Title Insurance Company of Minnesota to Zapata Development Corporation affecting St. Clair Plantation, St. James Parish, Louisiana has been removed therefrom. This constitutes an endorsement to the policy.
O. B. Taylor, Jr., Title Officer of Title Insurance Company of Minnesota"
Zapata acknowledged receipt of this message on November 19, 1975, but informed Valhi at a conference on November 24, 1975 the indemnification method did not constitute a valid removal of the exception in the title policy. It tendered title to both plantations to Valhi for $1,190,000, which plaintiff rejected. Hence this lawsuit.
The trial court decided the contract clearly stated Valhi was obligated to have the Haydel Matter exception removed from the title policy and to deliver a warranty deed, and it did both. He refused to allow defendant to use parol evidence in connection with a reconventional demand which requested reformation of the November 1974 contract to more accurately state the true intent of both buyer and seller.
The trial court erred in refusing to admit parol evidence in connection with the demand for the contract reformation. We agree with the trial court's conclusion that the contract as written is unambiguous and it clearly states the exception shall be deemed removed if the title policy is amended so that it contains no exception for the Haydel Matter. If this writing reflects the true intent of the parties, C.C. art. 2276 would apply and parol evidence would be inadmissible to alter or vary the terms of the agreement.
But in this case the evidence suggests that the parties may not have contemplated that the problem would be resolved by the removal of the exception with a seller-insurer indemnification side agreement. When Valhi (then Southdown) agreed to the sale, there existed in its files a title policy issued to it in 1972 excepting from coverage the Haydel Matter. In other words, the Valhi records reflected a title problem with St. Clair Plantation when its officials began dealing with Zapata representatives. Zapata only learned of the defect a short time before title was to be transferred in November 1974.
Andrew McCollam, Jr., president of Southdown Land Company at the time the sale was passed, is an attorney who has considerable experience with examination of titles. He testified he knows Zapata generally buys real estate for the purpose of development and resale and he assumed the two plantations were no exception. This statement suggests that both contracting parties could have intended in November *870 1974 that Valhi (then Southdown) must either cure the title or buy back the land. Both parties are knowledgeable in problems with unmerchantable titles and the record suggests that perhaps neither party contemplated removing an exception from a title policy by the type of indemnification agreement entered into to effect that purpose.
Reformation of a contract is an equitable remedy available to a contracting party if the instrument recites terms to which neither party agreed. Even if the language utilized is clear and unambiguous, parol evidence is admissible to establish that the language does not embody the essence of the agreement to which there was mutual assent.
In Fontenot v. Lewis, 215 So.2d 161, 163 (La.App. 3d Cir. 1968), the court stated:
"An action to reform a written instrument is an equitable remedy, and it lies only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true contract or agreement of the parties. Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948). It is a personal action, even when applied to real estate, and the burden of proof rests on the one seeking reformation of the instrument to establish the mutual error and mistake by clear and convincing proof, parol evidence being admissible for this purpose. Waller v. Colvin, 151 La. 765, 92 So. 328 (1922); Walker v. Jim Austin Motor Company, 162 So.2d 135 (La.App. 1st Cir. 1964, writ refused); Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957); Kemp v. Beasley, 188 So.2d 425 (La.App. 3d Cir. 1966); Southwest Gas Producing Company v. Hattie Brothers, 230 La. 339, 88 So.2d 649 (1956)."
See also Miley v. Thompson, 196 So.2d 640 (La.App. 1st Cir. 1967). When parties to a contract imprecisely and incorrectly state what was mutually agreed to, equity requires the one alleging error an opportunity to prove by extrinsic evidence the correctness of his allegation. See Price v. Taylor, 139 So.2d 230 (La.App. 1st Cir. 1962). Parol evidence is not offered to vary the terms of the written instrument but to show that the writing does not express the true intent or agreement of the parties.
In the case before us parol evidence was disallowed. This erroneous ruling deprives Zapata of the opportunity to prove by parol and extraneous evidence the parties intended that the retention of the plantations by the purchaser was predicated upon Valhi's furnishing it with a clear, nonlitigious title at the end of the year. And a corresponding opportunity must be afforded to Valhi to refute any evidence presented by Zapata in support of its right to reform the agreement.
We pretermit passing upon the merits of the validity of the telefax endorsement to the title policy in order to avoid a piecemeal adjudication of this matter.
For the reasons assigned, the judgment appealed from is annulled and this matter is remanded for further proceedings consistent with the views herein expressed.
JUDGMENT ANNULLED; REMANDED.
NOTES
[1] The agreement of sale and purchase provided for the conveyance by Zapata to Southdown of a large agricultural property in California. The consideration for the sale was the payment by Southdown of approximately $19,000,000 and the conveyance of several properties located in various states, which included the St. Clair and the St. Amelia Plantations.
[2] Merchantable title is: "One that can be held without reasonable apprehension of being assailed and readily transferable in market." Black's Law Dictionary 4th Ed.Rev.